Steve ROGERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 67334.

Court of Criminal Appeals of Texas,
Panel No. 2.

June 17, 1981.
On Rehearing March 3, 1982.
On State's Second Rehearing
Oct. 20, 1982.

James C. Gordon, Abilene, for appellant.

Patricia A. Elliott, Dist. Atty. and R. Jack Grant, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and TOM G. DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

This appeal is taken from an order revoking probation that resulted from a conviction for theft of property over the value of $200.00. Appellant pleaded guilty to the offense of theft on September 17, 1979 and punishment was assessed at two years confinement and a fine of $500.00. Imposition of the sentence was suspended and probation was granted.

The record reflects that on May 14, 1980 the State filed a motion to revoke probation alleging six different violations of the conditions of his probation, namely: (1) that appellant failed to report to his probation officer during the month of February; (2) that appellant failed to work faithfully at suitable employment insofar as possible; (3) that he failed to advise his probation officer within 48 hours of any change in his address or place of employment; (4) that appellant failed to pay his fine of $500.00 at the rate of $50 per month for the months of October, 1979 through April 1980; (5) that he failed to pay his monthly probation fee of $15 for the months of November, 1979 through April, 1980; and (6) that appellant

failed to pay $43.00 court costs on or before October 17, 1979. Immediately preceding the hearing held on June 26, 1980, appellant signed a stipulation of evidence and confessed to all six of the violations contained in the State's motion to revoke probation. Appellant also entered an oral plea of "true" to these allegations before the trial judge. At the conclusion of this hearing the trial judge ruled as follows:

"THE COURT: And when you tell me that you can't get a job—It's not the fact that the jobs aren't there; they are there. Now, there are all kinds of excuses for not obeying this order.

*I am going to reinstate you on probation; that is, for the time being. I am going to continue this hearing to a specific date, on September 26. That's sixty days away.*[1]

THE DEFENDANT: Yes, sir.

THE COURT: *And then I am going to determine whether or not you are serious about this thing.*

THE DEFENDANT: Yes, sir.

THE COURT: And *I am telling you right now that if you are not serious about it, this probation is going to be revoked and you are going to the penitentiary.*

THE DEFENDANT: Yes, sir.

THE COURT: Now, you have got some help here in getting a job. You better get out there and get to work. It may be backbreaking, but it won't hurt you. And I expect you to obey all of the other requirements of this order. *And when sixty days is up, I want at least half of this five hundred sixty something dollars to be paid.*

THE DEFENDANT: Yes, sir.

THE COURT: You make a note of that, Ms. Faulkner.

MS. FAULKNER: Yes, sir.

THE COURT: Now, then, when you were placed on probation back last September, I asked you if you understood the requirements, and you said you did.

THE DEFENDANT: Yes, sir.

THE COURT: I asked you if you would comply with them and you said you would.

THE DEFENDANT: Yes, sir.

THE COURT: *And you haven't. Now, I am going to give you sixty days just to straighten up, and if you don't, you're finished.*

THE DEFENDANT: Yes, sir. That's fair enough, sir.

THE COURT: And you comply— Whether you are working or what you are doing, the least you can do is report like it says to report.

THE DEFENDANT: Yes, sir."

On September 26, 1980 the trial court announced that "this is a continuation of a hearing that was had on June 26, 1980;" and summarily revoked appellant's probation on the basis of the six violations appellant previously stipulated to as being "true." The trial judge refused to permit any additional evidence or testimony. There is no allegation of any subsequent violations contained in the record before us; indeed, the record is wholly silent as to what, if anything, occurred during the ninety day interim between June 26, 1980 and September 26, 1980. There is simply no hint whether or not appellant obeyed the oral instructions of the trial judge and upheld the conditions of his probation.

By his first ground of error appellant contends that the trial judge denied him his right to due process and fundamental fairness in that having once exercised his discretion to continue appellant on probation at the conclusion of the hearing on June 26, 1980, he was without authority to revoke appellant's probation on September 26, 1980 in the absence of allegations or proof of any subsequent violations. Appellant primarily relies on this Court's decisions in *Wallace v. State*, 575 S.W.2d 512 (Tex.Cr.App.1979) and *Wester v. State*, 542 S.W.2d 403 (Tex. Cr.App.1978). The State responds by asserting that the trial judge merely continued the hearing, therefore he did not exercise his authority to continue, modify, or

---

1.  All emphasis is supplied by the writer of this       opinion unless otherwise indicated.

revoke appellant's probation until September 26, 1980. Thus, under the holdings of this Court in *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978), *Stanfield v. State,* 588 S.W.2d 945 (Tex.Cr.App.1979) and *Ex parte Feldman,* 593 S.W.2d 720 (Tex.Cr.App.1980), no proof of any subsequent violations was necessary.[2]

Accordingly, the issue is refined so that it devolves into the question of whether the trial judge continued appellant's probation, or continued the hearing itself on June 26, 1980. Both types of continuances are statutorily authorized in Article 42.12, § 8, V.A.C.C.P. as follows:

> "... after a hearing without a jury [the trial court] may either continue, modify, or revoke the probation... The court may continue the hearing for good cause shown by either the defendant or the state."

In *Wallace v. State,* supra, at 514, the Court wrote:

> "What did the trial judge do here? Did he continue the appellant on probation or did he revoke probation on June 10, 1977? He orally stated he was revoking probation, but he entered no written revocation at the time and did not impose sentence. In fact, he stated to the appellant that he hoped he didn't have to take that action... Under any circumstances, on August 17, 1977, *the appellant's conditions of probation were modified and he was released subject to such conditions.* He was not sentenced, and appellant's case was not disposed of as if there had been no probation. *In effect what the court did was to continue the appellant on probation."*

In *Furrh v. State,* 582 S.W.2d 824, 827 (Tex.Cr.App.1979) the Court opined that:

> "The record in this case, as in *Wallace v. State,* supra, clearly shows that *the trial court continued appellant on modified probation* and did not revoke the probation after a violation of the conditions of probation was shown at the earlier hearing. Cf. *Wester v. State,* supra."

The decisions in *Furrh* and *Wallace,* both supra, stand for the proposition that the trial court having once exercised its authority and modified the conditions of probation, may not change that disposition at a subsequent hearing where no further violation was shown.

On the other hand, as the State correctly notes, in *Stanfield v. State,* supra, at 946, the Court held that by continuing the hearing, the trial court "took its decision under advisement." In *Ex parte Feldman,* supra, at 721, the Court held that the trial court may continue the hearing:

> "... keeping before it the violations already proven, and permitting the *careful consideration* of mitigating or exacerbating circumstances, *including the subsequent conduct of the probationer,* before making a final decision whether to revoke."[3]

Herein lies the crux of the dilemma: On June 26, 1980 did the trial judge continue appellant's probation and modify it accordingly, or did he take his decision under advisement pending the outcome of subsequent conduct by appellant? It is far from clear, particularly when, as here, we have no idea what appellant's subsequent conduct was nor whether the trial judge was even apprised of it. The critical issue must finally be answered by what is contained in the record before us. The transcription of the court reporter's notes clearly reflect that the trial judge told appellant that he was "going to reinstate the probation; that is, for the time being," and then modified

---

**2.** We note that both parties submitted superior briefs researching this issue. We take this opportunity to commend appellant and the State for their efforts.

**3.** *Feldman* was decided by a closely divided Court, and the phrase "including the subsequent conduct of the probationer" may well have provoked some of the difficulty. It is not fitting that a Court Panel negate any germane language in an opinion by the Court En Banc, but we do feel obliged to remark that if "the subsequent conduct of the probationer" is given "careful consideration" before making a final decision whether to revoke, the record made should reveal just what that "subsequent conduct" is.

the terms of appellant's probation by requiring that he pay at least half of the $563.00 within the next sixty days. There was no written revocation order entered after the hearing on June 26, 1980, nor was appellant sentenced. As of June 26, 1980 appellant's case was certainly not disposed of as if there had been no probation.[4] *Wallace v. State,* supra. On balance therefore, we hold that the facts of the case presented here most nearly resemble the situation and the decision in *Furrh v. State,* supra. Accordingly, we hold that by his actions and oral instructions modifying the conditions of probation, the trial judge exercised his discretion and determined to continue appellant's probation on June 26, 1980; having done so, he was without authority to revoke appellant's probation on September 26, 1980 in the absence of allegations and proof of a subsequent violation. Appellant was therefore denied his right to due process of law. The order revoking his probation is set aside and the cause is remanded.

TOM G. DAVIS, J., dissents.

Before the Court en banc.

## OPINION

### ON STATE'S MOTION FOR REHEARING

ROBERTS, Judge.

As the panel's opinion noted, this Court has delivered two lines of cases in which there was a long delay between the proba-

tion revocation hearing and the decision to revoke probation. The question in each case was whether due process of law[1] and due course of the law of the land[2] required another hearing to be held before probation was revoked. In one line of cases we held that another hearing was required if the delay was caused by the *probation's* being continued.[3] In the other line, we held that another hearing was not required if the delay was caused by the *hearing's* being continued.[4] The panel strove dutifully, as panels must, to follow the precedents of the en banc court by deciding "whether the trial judge continued appellant's probation, or continued the hearing itself on June 26, 1980."

On rehearing we turn away from this question. Further reflection and the experience of cases such as this one have persuaded us that the distinction between "continuing the probation" and "continuing the hearing" is irrelevant to the question of what process is due when the trial court finally takes away the probationer's liberty.

We begin by recognizing that the liberty of a probationer is protected by the due process and due course of law provisions of the constitutions. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Wester v. State,* 542 S.W.2d 403 (Tex.Cr.App.1976). This is because his liberty, although indeterminate, includes many of the core values of unqualified liberty, such as freedom to be with family and

---

4. We would urge trial judges to clarify their actions so this type of situation is eliminated in the future. The trial court here, on the one hand told appellant that his probation was reinstated, and on the other hand clearly stated that he was continuing the hearing. What did the trial judge really mean? This question should not be left unanswered in the record. Certainly if we are forced to surmise the answer, there can be little doubt as to the confusion that remains on the part of the probationer. Since it is the probationer who needs to understand the implications of the trial judge's rulings, we would expect that the trial court would explain the effect to him, also thereby preserving it in the record.

1. "[N]or shall any State deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const.amend. XIV.

2. "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Texas Const. art. I, sec. 19.

3. *Furrh v. State,* 582 S.W.2d 824 (Tex.Cr.App. 1979); *Wallace v. State,* 575 S.W.2d 512 (Tex. Cr.App.1979); *Wester v. State,* 542 S.W.2d 403 (Tex.Cr.App.1976).

4. *Ex parte Feldman,* 593 S.W.2d 720 (Tex.Cr. App.1980); *Stanfield v. State,* 588 S.W.2d 945 (Tex.Cr.App.1979); *Furrh v. State,* 582 S.W.2d 824 (Tex.Cr.App.1979) (dictum); *Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978); *Sappington v. State,* 508 S.W.2d 840 (Tex.Cr.App. 1974).

friends, freedom to form other enduring attachments of normal life, freedom to be gainfully employed, and freedom to function as a responsible and self-reliant person. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).[5] In addition, the probationer has relied on at least an implicit promise that probation will be revoked only if he fails to live up to the conditions of probation. *Id.* And, of course, he faces lengthy incarceration if his probation is revoked. *Id.* Therefore the termination of probation inflicts a grievous loss on the probationer and often on others. *Id.* Probation is a valuable liberty that is protected by the Fourteenth Amendment and by Section 19 of the Texas Bill of Rights.

It is apparent that the probationer continues to have an interest in this liberty when, after a hearing such as the one held on June 26 in this case, the court returns him to probation rather than revoking probation. His liberty interest is not affected by the procedure's being called "continuance of the hearing" rather than "continuance on probation." He continues to enjoy the core values of liberty mentioned above; he continues to rely on an at least implicit promise that probation will be revoked only if he breaches a condition; and he continues to face lengthy incarceration. The grievous loss, revocation, has yet to be suffered. Therefore the probationer who has been returned to probation after a hearing, regardless of the procedural label, retains the valuable liberty of probation and the due process protection of the Fourteenth Amendment and Section 19.

This protection includes the fundamental requirement that the probation, recently returned, not be taken away arbitrarily. There must be a determination that the probationer has in fact breached the condi-

tions of probation. *Morrissey v. Brewer,* 408 U.S. 471, 483–484, 92 S.Ct. 2593, 2601–2602, 33 L.Ed.2d 484 (1972); *Wester v. State,* 542 S.W.2d 403, 405–406 (Tex.Cr.App. 1976). In the context of cases such as this, in which the probationer was returned to probation for three months, there must be a determination that he breached the conditions *after* he was returned to probation (or that there is newly discovered evidence of a previous violation which was not known at the time of the hearing).[6] It would be the epitome of arbitrariness for a court first to conduct a hearing on alleged violations and exercise its discretion to return the probationer to probation (whether by a "continuance of the hearing" or by a "continuance of the probation"), and then decide several months later to exercise its discretion in the opposite fashion by revoking the probation without any determination of a new violation.

The cases which approved the revocation of probation, several months after the probationer was returned to probation, without a determination of a new violation seem to sanction such arbitrariness. Although the violation of due process and due course of law appears clearly, respect for stare decisis causes us to examine these holdings to see if they can be justified. To excuse the need for another hearing after the probationer was returned to probation by "continuing the hearing," three justifications were given: that the procedure was authorized by statute, that it was a "break" which the probationer wanted, and that it did not involve the consideration of new violations. (The Court recently abandoned the third justification.) None of these justifications can withstand scrutiny.

The statutory justification was advanced in *Ex parte Feldman,* 593 S.W.2d 720, 721

---

**5.** Although *Morrissey v. Brewer* involved parole rather than probation, there is no difference relevant to the guaranty of due process between revocation of parole and revocation of probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973).

**6.** This determination, of course, must be made at another revocation hearing. Such hearings

in Texas provide, and exceed, the minimum requirements of due process. *Whisenant v. State,* 557 S.W.2d 102 (Tex.Cr.App.1977). See *Vincent v. Texas,* 449 U.S. 199, 101 S.Ct. 632, 66 L.Ed.2d 391 (1980) (holding unclear) (per curiam) (dismissing appeal which challenged *Whisenant*).

(Tex.Cr.App.1980), and *Furrh v. State,* 582 S.W.2d 824, 827 (Tex.Cr.App.1979) (dictum). It was based on V.A.C.C.P. Article 42.12, Section 8(a), which provides, "The court may continue the [probation revocation] hearing for good cause shown by either the defendant or the state." It was held that the statute permitted the trial court to hold an essentially complete hearing and then, by continuing the hearing without a formal decision, to return the probationer to probation for an extended period before deciding to revoke. The first thing to be said about this justification is that, even if it were a correct construction of the statutory provision, it could not justify an unconstitutional procedure. It is well settled that a statute which is contrary to constitutional provisions cannot be the law of the land. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176–177, 2 L.Ed. 60 (1803). But this construction of the statute was not correct. The statute, we hold, contemplates a continuance which is necessary to overcome one of the various obstacles that prevent a hearing from beginning on time and proceeding smoothly to the closing of evidence, such as an overcrowded docket, the illness of counsel, the unexpected absence of a witness, and so on. We also hold that it contemplates a short period of time (such as a few days) after the closing of evidence during which a conscientious judge, in good faith, might consider his decision.[7] But the statutory provision for a continuance does not contemplate a prolonged period during which the probationer is returned to probation.[8] Such an action is not a true continuance; it is a thinly-disguised decision to continue the probation. *Ex parte Feldman,* 593 S.W.2d 720, 722 (Tex.Cr.App.1980) (Onion, P.J., dissenting). There is no reason to believe that the statutory provision for continuing the hearing was intended to accom-

plish a disguised continuance of the probation; the statute provides separately that after the hearing the court "may either *continue,* modify, or revoke the probation." V.A.C.C.P. Article 42.12, Section 8(a) (emphasis supplied).

The second justification for the continuance of the hearing is the "break" argument which was made in *Ex parte Feldman,* 593 S.W.2d 720, 722 (Tex.Cr.App.1980):

> "A probation violator, if faced with a choice between immediate revocation and imprisonment and the postponement of final action, would in practically all cases choose the delay. He would consider himself to be 'getting a break.' "

*Accord, Stanfield v. State,* 588 S.W.2d 945, 947 n. 1 (Tex.Cr.App.1979). This argument cannot justify the actions taken in these cases. To begin with, the argument fails, even on its terms; while the probationers undoubtedly want the break of being returned to probation, they just as undoubtedly do not want the "break" of having that probation revoked summarily, which is the issue before us. It is true that the probationers got a break when, after the evidence was closed, the trial court returned them to probation rather than revoking. It is worth remembering that they got a break when they were granted probation to begin with. The point is that their liberty interest in remaining on probation is not any less on account of its coming through an undeserved break. "It is clear at least after *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that a probationer can no longer be denied due process in reliance on the dictum . . . that probation is an 'act of grace.' " *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n. 4, 93 S.Ct. 1756, 1760 n. 4, 36 L.Ed.2d 656 (1973). "Getting a

---

7. But, from arrest to disposition, the probationer who has requested a speedy hearing may not be confined for more than 20 days. *Aguilar v. State,* 621 S.W.2d 781 (Tex.Cr.App., 1981).

8. See *Ex parte Feldman,* 593 S.W.2d 720 (Tex.Cr.App.1980) (hearing had been "continued," and probationer returned to probation, for 7½ months); *Stanfield v. State,* 588 S.W.2d 945 (Tex.Cr.App.1979) (2 months); *Traylor v.*

*State,* 561 S.W.2d 492 (Tex.Cr.App.1978) (8 months); *Sappington v. State,* 508 S.W.2d 840 (Tex.Cr.App.1974) (3 months). *Cf. Furrh v. State,* 582 S.W.2d 824 (Tex.Cr.App.1979) (probation was continued for 3 months, then revoked without determination of new violation; this Court reversed, but said in dictum that trial court "could have continued the *hearing* ").

break," the Texas version of "act of grace," is no more a reliable dictum for denial of due process. The Court was at pains to explain in *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972):

> " '[T]his Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege." ' *Graham v. Richardson,* 403 U.S. 365, 374 [91 S.Ct. 1848, 1853, 29 L.Ed.2d 534] (1971). Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168 [71 S.Ct. 624, 646, 95 L.Ed. 817] (1951) (Frankfurter, J., concurring), quoted in *Goldberg v. Kelly,* 397 U.S. 254, 263 [90 S.Ct. 1011, 1018, 25 L.Ed.2d 287] (1970). The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. *Fuentes v. Shevin,* 407 U.S. 67 [92 S.Ct. 1983, 32 L.Ed.2d 556] (1972)."

The fact that the probationers got their liberty through a break has no significance in the due process and due course of law considerations.

The third justification which has been made may be called the "hear-no-evil" justification. It approved of a belated revocation without an additional hearing if that action appeared from the record to have been based only on the violations which were proved months previously at the original hearing, and not on any subsequent conduct which may have occurred after the probationer was returned to probation. The trial court had heard no evil, at least not on the record. *Stanfield v. State,* 588 S.W.2d 945, 947 (Tex.Cr.App.1979); *Traylor v. State,* 561 S.W.2d 492, 494 (Tex.Cr.App. 1978); *Sappington v. State,* 508 S.W.2d 840, 841 (Tex.Cr.App.1974). This justification apparently was made in recognition of the due process violation that would occur if the trial court did consider reports of such subsequent conduct.[9] The Court expressly abandoned this justification (and, apparently, its due process qualms) in *Ex parte Feldman,* 593 S.W.2d 720, 721 (Tex.Cr.App. 1980), when it held that the trial court may continue the hearing, "keeping before it the violations already proven and permitting the careful consideration of mitigating or exacerbating circumstances, *including the subsequent conduct of the probationer,* before making a final decision whether to revoke." (Emphasis supplied.)[10] This latest holding, because of its plain disregard of the minimum requirements of due process, is even worse than the "hear-no-evil" procedure. But the "hear-no-evil" justification also fails, in its own way, to measure up to the standards of due process and due course of law. As we have explained above, it is the epitome of arbitrariness that a court should hear all the evidence and return a person to the liberty of probation, only to take the liberty away months later for no additional reason (at least none that appears of record). The action is no less arbitrary—indeed, in a sense, it is even more arbitrary—if the record is kept scrupulously clean of any sign that reports of new violations reached the ears of the trial judge. And, no matter how spotless the record, it always has been hard to believe that the

---

**9.** The probationer would be denied the minimum requirements of due process: written notice, disclosure of adverse evidence, opportunity to be heard and to present evidence, right to confront and cross-examine adverse witnesses, and (in some cases) the assistance of counsel. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973). There would also be a denial of more elaborate rights provided by Texas law. *See generally Whisenant v. State,* 557 S.W.2d 102, 104–105 (Tex.Cr. App.1977).

**10.** It may be noted that all three judges who advanced the "hear-no-evil" justification have abandoned it, too. The author of *Stanfield v. State, supra,* also wrote the passage quoted above from *Ex parte Feldman.* The author of *Traylor v. State, supra,* has stated forthrightly, "I would not hesitate to overrule *Traylor* if it can be used to justify the procedure here utilized." *Ex parte Feldman,* 593 S.W.2d 720, 722 (Tex.Cr.App.1980) (Onion, P.J., dissenting). The author of *Sappington v. State, supra,* is the author of this opinion.

trial judge really heard no evil—that he just decided, for no apparent reason, to finish the revocation proceeding that he had interrupted a few months previously. The "hear-no-evil" argument, like the other justification, is not sufficient to excuse the denial of another hearing.

Only a few years ago, when trial courts continued probationers on probation and then tried to take away that liberty without a proper determination of a new violation of the conditions of probation, we condemned the practice.

> "[W]hen a revocation proceeding has been had and the defendant continued on probation in the discretion of the court (although there was an adequate basis for revocation demonstrated at the hearing), the continuation cannot subsequently be arbitrarily withdrawn at the whim of the trial court or upon mere fact of an arrest. To hold otherwise would violate due process, due course of the law of the land and fundamental fairness."

*Webster v. State,* 542 S.W.2d 403, 406 (Tex. Cr.App.1976) (footnote omitted). *Accord, Wallace v. State,* 575 S.W.2d 512 (Tex.Cr. App.1979). What we recognize today is that the same constitutional violations occur when probation is so revoked after a probationer was returned to probation during a prolonged "continuance of the hearing." None of the cases which approved this procedure have justified the distinction as being anything more than a charade. While there is a place for a short, bona fide continuance of the hearing, a continuance cannot become a disguised decision to return the probationer to probation, as it did in this case. To the extent they held otherwise, opinions approving such a procedure are overruled.[11]

The motion for rehearing is overruled.

CLINTON, Judge, concurring.

As author of the panel opinion I and my brothers did indeed undertake to determine on which side of the unhandy dichotomy created by the Court over the years the facts of this matter fell. To condition a decision as to the liberty of a probationer in this fashion is awkward at best, but downright injudicious at worst. Trial judges are entitled to a brighter line of procedural guidance, and I concur with what the Court provides today.

The opinion of the Court on State's motion for rehearing is assailed by the dissenting opinion with a warning, surely not prediction, of an adverse reaction on the part of the trial bench—"a reluctance to grant probation, a reluctance to allow a continuance of probation revocation hearings, and a reluctance to give doubtful probationers a second chance." I would think the first "reluctance" does not follow at all, and nothing in the opinion of the Court inhibits a trial judge from granting a bona fide continuance of the hearing, in the language of the statute, "for *good cause shown* by either the defendant or the state,"[1] Article 42.12, § 8(a), V.A.C.C.P. But, a hazard to a "second chance" for "doubtful probationers" *is* evident should the reaction suggested by the dissent become in vogue—provided there is no other rational and sympathetic way to treat the "doubtful probationers." I believe there is though, and turn now to develop still another alternative that is not examined precisely in either opinion.

Conditions of probation initially imposed, however inscrutable,[2] are not immutable during the period of probation. Section 6 of Article 42.12, supra, authorizes the court having jurisdiction "at any time" during the term to "alter or modify" conditions of probation,[3] and § 8(a) contemplates that af-

---

11. These include the cases listed in nn. 4 and 8, supra.

1. All emphasis is mine throughout unless otherwise indicated.

2. Among others:
   "b. Avoid injurious or vicious habits;

   c. Avoid persons or places of disreputable or harmful character;
   \* \* \* \* \* \*
   g. Remain within a specified place;
   \* \* \* "

3. Only alluding to the authority of the probating court, I do not intimate any views as to proper process or procedure for an "any time"

ter a revocation hearing the court "may either continue, *modify,* or revoke the probation." Thus, while a given condition usually will, it need not run the entire period of probation; nor is the court precluded from instituting an additional or new one as circumstances may require. The terms and conditions enumerated in § 6 are what probation "may include, but shall not be limited to."[4]

Accordingly, it seems to me that a court is well equipped to provide a "second chance" to the "doubtful probationer." The judge of the court may tailor a new condition or modify an existing one to fit whatever problem is being contemporaneously manifested by the probationer[5] and, along with that amount of oral "woodshedding" deemed appropriate, reduce it to writing. Then, thereafter if and when a violation of that condition (or any other one, of course) is alleged and shown by a preponderance of the evidence, all will know that the probationer muffed his second chance.

In the instant case the record demonstrates that the court below was willing to extend a second chance and expected to see improvements in appellant's compliance with the conditions of probation, including payment of at least "half of this five hundred sixty something dollars." We cannot learn from the record in what respect appellant failed those great expectations; still had measures for correcting one or more of the problems concerning the judge been reduced to writing, filed among the papers and a copy furnished appellant, and our record revealed that improved compliance had not been achieved within the sixty days

allowed, I am satisfied we would be addressing a much different question in this case.

A simple written modification may seem to exalt form over substance. In reality it operates against that abuse of discretion which is undetectable from a record of a summary proceeding, by demonstrating there was none.

I join in the opinion and judgment of the Court, with this effort to suggest an alternative to a judicial slamming shut the door to a second chance.

McCORMICK, J., joins.

TEAGUE, Judge, concurring.

On September 17, 1979, after finding appellant guilty of the third degree felony offense of theft over $200, the trial court assessed appellant's punishment at two years' confinement in the penitentiary and also assessed a $500 fine, but ordered the imposition of the two years' confinement suspended. Appellant was then placed on adult probation. See Art. 42.12, V.A.C.C.P. Other than imposing the special condition of probation that appellant would remain in Taylor County the trial court ordered that appellant would comply during his term of probation with the usual rules and conditions of probation. See Art. 42.12, Sec. 6, *supra.*

Subsequently, on May 14, 1980, the State filed a motion to revoke appellant's probation, alleging therein that appellant violated such "technical" conditions of his probation as failure to report; failure to work; failure to report change of residence and

alteration or modification of conditions of probation.

**4.** Noteworthy in this connection is that the restrictive provision separately set forth at the end of § 3a, *id.*—"If probation is granted by the jury the court may impose only those conditions which are set forth in Section 6 hereof." —was deleted effective September 1, 1981, by Acts 1981, 67th Leg., ch. 639, p. 2466, § 2. So no longer necessary is a resort to the notion of "fleshing out" prescribed terms and conditions,

as in, e.g., *Flores v. State,* 513 S.W.2d 66, 69 (Tex.Cr.App.1974).

**5.** Decisions of the Court acknowledge "wide discretion in selecting conditions of probation," limited generally by a "reasonable relationship to the treatment of the accused and the protection of the public," *Hernandez v. State,* 556 S.W.2d 337, 342–343 (Tex.Cr.App.1977), determined upon a hearing for that purpose. See *Warr v. State,* 591 S.W.2d 832, 834–835 (Tex. Cr.App.1979).

place of employment; and failure to pay the above fine.[1]

On June 26, 1980, the appellant appeared in the trial court for a hearing on the State's motion to revoke his probation, and thereafter entered into a stipulation of evidence, which stipulation of evidence constitutes an admission by appellant that all of the allegations of the State's motion to revoke were true.[2] After hearing the evidence on the State's motion to revoke, and engaging in a colloquy with the appellant, the trial court then continued the hearing until September 26, 1980. On that date, the trial court, without hearing any evidence, taking any testimony or making any findings of fact, summarily entered an order revoking appellant's probation, and imposed the previously suspended two year sentence.

At the June 26, 1980, hearing, appellant testified that his failure to comply with the above conditions of probation resulted from a variety of circumstances: "I couldn't hold or keep a job. I couldn't find a job in Abilene. I didn't want to worry anybody. I figured I could work it out myself, eventually." His real problem with failing to comply with the conditions of probation is probably best expressed by the following question asked by the prosecuting attorney, and the answer appellant gave:

Q: Would it be a fair statement to say that you just stuck your head in the sand and sort of hoped the problem would go away?

A: Yes, sir.

Thereafter, the trial court heard appellant's plea for a "second chance," as well as hearing statements from appellant's relatives as to what assistance and aid they would render appellant if the trial court gave appellant a "second chance." The trial judge then stated:

I am going to reinstate you on probation; that is, for the time being. I am going to continue this hearing to a specific date, on September 26. That's sixty days away.

THE DEFENDANT: Yes, sir.

THE COURT: And then I am going to determine whether or not you are serious about this thing.

THE DEFENDANT: Yes, sir.

THE COURT: And I am telling you right now that if you are not serious about it, this probation is going to be revoked and you are going to the penitentiary.

THE DEFENDANT: Yes, sir.

THE COURT: Now, you have got some help here in getting this job. You better get out there and get to work. It may be backbreaking, but it won't hurt you. And I expect you to obey all of the other requirements of this order. And when sixty days is up, I want at least half of this five hundred sixty something dollars to be paid.

THE DEFENDANT: Yes, sir.

THE COURT: You make a note of that, Ms. Faulkner, [the probation officer].

MS. FAULKNER: Yes, sir.

THE COURT: Now, then, when you were placed on probation back last September, I asked you if you understood the requirements, and you said you did.

THE DEFENDANT: Yes, sir.

THE COURT: I asked you if you would comply with them and you said you would.

THE DEFENDANT: Yes, sir.

---

1. In the vernacular of some practicing defense attorneys, prosecuting attorneys, and trial judges, these conditions are usually referred to as "technical" conditions of probation, characterizing them as such in order to distinguish them from mor serious conditions of probation, such as "violate no law." It is recognized, nevertheless, among those members of the Bench and Bar who use the vernacular, "technical conditions," that any violation of probation may cause a trial court to revoke a defendant's probation.

2. Appellant also entered a plea of true to the State's motion to revoke probation. See *Detrich v. State*, 545 S.W.2d 835, 837 (Tex.Cr.App. 1977). Such a plea, without more, would have been sufficient in itself to sustain an order revoking the appellant's probation. See, *Cole v. State*, 578 S.W.2d 127, 128 (Tex.Cr.App. 1979); *Clapper v. State*, 562 S.W.2d 250 (Tex. Cr.App.1978).

THE COURT: *And you haven't. Now, I am going to give you sixty days just to straighten up, and if you don't, you're finished.*

THE DEFENDANT: Yes, sir. That's fair enough, sir.

THE COURT: And you comply—Whether you are working or what you are doing, *the least you can do is report like it says to report.*[3]

THE DEFENDANT: Yes, sir. (Emphasis added.)

Ninety days came and went, and dutifully, on September 26, 1980, appellant reappeared before the trial court. Without any evidence, statements or testimony from witnesses, nor anything for that matter, as reflected by the "blank" page in the record on appeal, the trial court summarily caused the two year punishment previously suspended on September 17, 1979, to be activated when it sentenced appellant to the penitentiary for a term of two years. On October 10, 1980, the appellant was formally sentenced to serve the two year sentence, after which he gave notice of appeal to this Court.

Though I find under the circumstances that the trial court's action in not revoking appellant's probation on June 26, 1980, was commendable, nevertheless, I have also found that the trial court neither afforded nor accorded appellant due process and due course of law, as provided by the provisions of the State and Federal Constitutions, when it revoked appellant's probation on September 26, 1980. See Art. I, Sec. 19, Texas Constitution; Amendment 14, United States Constitution.

Though I appreciate and understand the many eloquent and well stated remarks that Judges Roberts and Clinton make in their respective opinions in this cause, I find

that the end result of Judge Roberts' holding, in which Judge Clinton joined, is really no result, and will permit and allow a continued perpetuation of that which he condemns—the continued hearing of a State's motion to revoke a defendant's probation. Furthermore, I find that many of the statements that Judge Roberts makes in his opinion are unnecessary to a proper disposition of this cause.

In *Ex parte Feldman,* 593 S.W.2d 720 (Tex.Cr.App.1980), this Court, speaking through Judge Leon Douglas, formerly a member of this Court, held:

Upon a finding of "true" to any allegation of violation of probation, the court has three choices. It can, in its sole discretion, immediately revoke probation. *Wise v. State,* 477 S.W.2d 578 (Tex.Cr. App.1972). It can choose instead to continue probation, but if it does, then no further action may be taken based upon the violations already before the court. *Wallace v. State,* 575 S.W.2d 512 (Tex.Cr. App.1979); *Wester v. State,* 542 S.W.2d 403 (Tex.Cr.App.1976). Or, it can continue the *hearing, Traylor v. State,* 561 S.W.2d 492 (Tex.Cr.App.1978), keeping before it the violations already proven and permitting the careful consideration of mitigating or exacerbating circumstances, including the subsequent conduct of the probationer, before making a final decision whether to revoke.

The dissent considers use of the third course a violation of petitioner's due process rights, because the court retains the power to revoke solely in its discretion, rather than requiring a formal evidentiary hearing upon new violations of conditions of probation.

A probation violator, if faced with a choice between immediate revocation and

---

**3.** One could infer from all of the above that the trial court conditioned his decision on whether or not he would revoke appellant's probation on this last statement. Alas, the record does not even reflect whether or not the appellant reported to his probation officer between June 26, 1980, and September 26, 1980. Also, the record on appeal is totally silent as to what conditions of probation appellant complied

with after June 26, 1980, or, for that matter, what conditions of probation he failed to comply with after June 26, 1980.

Furthermore, though the trial judge stated the matter was to be continued for sixty days, it is apparent from the docket sheet that he meant to use the word "ninety" rather than the word "sixty."

imprisonment and the postponement of final action, would in practically all cases choose the delay. He would consider himself to be "getting a break."

The instant case bears this out. The record is devoid of any indication that Feldman objected to the passing of the hearing. Nor is any motion on record seeking a speedy re-convening of the proceedings. It appears that Feldman, like the court, believed a continuance before the exercise of the court's discretion in deciding whether to revoke probation to be in his own best interests. We agree.

The relief sought is denied. *Id.* at 721, 722.

Presiding Judge Onion, joined by Judges Roberts, Phillips (formerly a member of this Court), and Clinton, wrote a strong dissenting opinion in *Feldman,* disagreeing with the majority of the Court that the law allowed for a "continued hearing on the State's motion to revoke."

If I comprehend what the dissenting opinion in *Feldman,* Id., stated, and reduce the matter to its bottom line, it is that no reasonable trial judge would ever *sentence* a probationer, who has allegedly violated his probation, to the penitentiary without first according and affording the probationer due process and due course of law, as guaranteed by both the Texas and United States Constitutions. The dissenters also rejected the notion that continuing the hearing on the State's motion to revoke probation until another day was in accord with due process and due course of law, where absolutely nothing was presented on the record concerning the "second hearing." Thus, the dissenters did not believe that a defendant probationer could summarily be *sentenced* to the penitentiary for allegedly violating his probation.

I totally agree with the conclusions expressed in the dissenting opinion by Presiding Judge Onion in *Feldman,* Id. However,

is not a proper disposition of this cause to simply hold that that part of *Feldman,* which held:

> Upon a finding of "true" to any allegation of violation of probation, the court has three choices. It can, in its sole discretion, immediately revoke probation. *Wise v. State,* 477 S.W.2d 578 (Tex.Cr. App.1972). It can choose instead to continue probation, but if it does, then no further action may be taken based upon the violations already before the court. *Wallace v. State,* 575 S.W.2d 512 (Tex.Cr. App.1979); *Wester v. State,* 542 S.W.2d 403 (Tex.Cr.App.1976)..... *Id.* at 721.

is sound in law, and overrule everything to the contrary that this Court has stated in the past, including the remainder of *Feldman's* holding? I think so.

I find, as did Judges Roberts and Clinton, that the avenues a trial court may take, after it has been shown that a probationer violated his probation, are few. In fact, see Art. 42.12, Sec. 8(a), V.A.C.C.P., and as pointed out by Judge Roberts, a trial court really has only two options: (1) revoke the probation or (2) continue the probationer on probation. The part of *Feldman,* supra, which allows for a continued hearing on the State's motion to revoke, and which I also vote to overrule, is, as Judge Roberts' states: "a thinly-disguised decision to continue the probation." But, where I part company with my Brother on the Bench, Roberts, J., is when he states: "While there is a place for a short, bona fide continuance of the hearing, a continuance cannot become a disguised decision to return the probationer to probation, as it did in this case," and "it [continuing the hearing] contemplates a short period of time (such as a few days) after the closing of evidence during which a conscientous judge, in good faith, might consider his decision." I take issue with the statements, "a short, bona fide continuance of the hearing," and "a short period of time (such as a few days),"[4] for I

---

4. Clearly, in the context in which the word "continue" is used in Art. 42.12, Sec. 8(a), *supra,* the word "continue" has the same meaning that the word has been given when this Court has construed and interpreted the provi-

sions of Chapter 29 of the Code of Criminal Procedure. I do not find any provision in our law which allows for "meditative" or "reflective" continuances.

am sure that the trial judge in this cause could make a sound argument that his continuing the hearing *was* for a short period of time, and *was* based on bona fide reasons, as well as making the argument that 90 days *was* only for a "few days." I believe that Judge Roberts' attempt to solve the problem is no solution at all. I must therefore return to September 26, 1980, when the trial court in this cause decided that the probationer did in fact violate his conditions of probation, and sentenced the appellant to the penitentiary.

I find that, as did Judge Clinton when he pointed out in his opinion: "We have no idea what appellant's subsequent conduct was [from June 26, 1980 until September 26, 1980] nor whether the trial judge was even apprised of it [the appellant's conduct during that period of time]."

In a short but rather illuminating and thought provoking decision, the Supreme Court of the United States in *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960),[5] speaking unanimously through then Justice Black, stated:

Thus, we find no evidence whatever in the record to support these convictions. Just as 'Conviction upon a charge not made would be sheer denial of due process,' so it is a violation of due process to convict and punish a man without evidence of his guilt. (362 U.S. 206, 80 S.Ct. 629, 4 L.Ed.2d 659.)

Just as a defendant in a regular criminal proceeding is not accorded and afforded due process and due course of law in a regular criminal proceeding when no evidence is presented by the prosecuting attorney, *Thompson v. Louisville, Id.,* I would hold that a defendant in a revocation of probation proceeding may not be *sentenced* to the

penitentiary without the record showing what evidence triggered the *sentencing.*[5A] We should indeed wipe from the books the continued hearing of the State's motion to revoke probation principle of law that has come into vogue in our trial courts as a result of this Court's decision of *Feldman,* supra, and bury that principle of law once and for all, for "second chance" and "getting a break" and due process or due course of law are not legally synonymous. I find that the trial court in this cause, like the then majority of this Court in *Feldman,* supra, failed to grasp that "second chance" and "getting a break" do not necessarily equal due process and due course of law. In failing to make the distinction the trial court in this cause has denied the appellant due process and due course of law.

Let us now return to June 26, 1980, after the hearing on the State's motion to revoke appellant's probation, and after it was shown that the appellant had in fact violated the alleged conditions of his probation. What could the trial court have legally done on June 26, 1980? The answer is simple. He could have: (1) revoked the appellant's probation and sentenced the appellant to the penitentiary, or (2) continued the appellant on probation. As seen by the facts of this cause, the first avenue was not then palatable to the trial judge, and probably acting in accordance with *Feldman* did not continue the appellant's probation, opting instead for continuing the hearing on the State's motion to revoke appellant's probation. That, of course, was the wrong decision for him to have made; especially without the record reflecting why he did what he did on September 26, 1980.

I disagree with the statements Judge Clinton makes regarding his proposed third

**5.** For years Sam Thompson's decision lay virtually dormant, for though it was occasionally cited it was never really recognized by the appellate courts of this nation, which probably includes the court which handed it down. However, in recent times, Sam Thompson's case is being more and more recognized, and even cited *as authority* to support a particular decision of an appellate court, even by the court which caused its birth. See *In re Win-*

*ship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**5A.** This statement, of course, is limited to a situation as at bar. I find in this cause that the appellant was not sentenced to the penitentiary because of the hearing on the State's motion to revoke, but was *sentenced* to the penitentiary for reasons not stated in the record on appeal.

alternative, for I find that his proposal is nothing more than either (1) requiring the probationer to adhere to the same identical conditions he had prior to the hearing on the State's motion to revoke, or (2) is nothing more than a modification of the original conditions. See Art. 42.12, Sec. 6, *supra.*

Nevertheless, I do find a third avenue, which does not concern a "meditative" or "reflective" type continuance, see footnote 4, *supra,* nor a modification of the defendant's probation. The third avenue or alternative that I propose would come into play where the trial court has conducted a hearing on the State's motion to revoke a defendant's probation, but the trial court after the hearing finds that he is in a "50–50" position, i.e., 50% of the trial judge's intellect tells him to sentence the defendant to the penitentiary but the remaining 50% of the trial judge's intellect tells him that if he had additional evidence or information he would then grant the defendant probationer a "second chance." The third avenue would be available only where the trial court believes that further investigation is warranted before deciding whether or not to revoke. But under the third avenue the probation could not be ordered revoked because of what the trial court had heard at the hearing on the State's motion to revoke probation.[6]

Again, I find that after a hearing on a State's motion to revoke the defendant's probation, and the evidence is closed, the trial judge can only do one of two things: (1) revoke the probation or (2) continue the defendant on probation. He cannot continue the hearing solely for the purpose of making a belated decision.[7]

I would therefore hold that the following should be the "true" rule of law:

Upon a finding of "true" to any allegation of violation of probation, the court has four choices. It can, in its sole discretion, immediately revoke probation. *Wise v. State,* 477 S.W.2d 578 (Tex.Cr. App.1972). It can choose instead to continue probation, but if it does, then no further action may be taken based upon the violations already before the court. *Wallace v. State,* 575 S.W.2d 512 (Tex.Cr. App.1979); *Wester v. State,* 542 S.W.2d 403 (Tex.Cr.App.1976). . . .

It can, before hearing any evidence on the State's motion to revoke, reset the cause until a future date, if done by argument of the parties.

It can, after hearing the evidence on the State's motion to revoke, continue the hearing for the sole purpose of obtaining new evidence or information that will be the determining factor whether or not the defendant's probation should be revoked. But, if it takes this course of action, then the final decision of whether or not to revoke must be made on the basis of the new evidence or information, and not on what may have been adduced at the hearing on the State's motion to revoke the probation.

As to my Brother Odom's concerns, as expressed in his dissenting opinion, that the overruling of that part of *Feldman,* which part I believe needs to be overruled, will "divest the trial judge of his discretionary authority under the statute to 'continue, modify or revoke the probation,'" and "the second chance [door] afforded by that discretion will be shut out as well," I disagree with his conclusions. I cannot envision that

---

**6.** In this context, I summarize what I mean: The trial court states: "After hearing the evidence on the State's motion to revoke, I find that there is sufficient evidence to order the defendant's probation revoked. However, I am going to order a pre-sentence investigation report and if it comes back unfavorable, then I am going to revoke the appellant's probation. If it comes back favorable, then I am going to continue the probation." The trial court, in that instance, would be prohibited from later saying: "Having reviewed the pre-sentence in-

vestigation report and finding that it is *favorable* to the defendant, nevertheless, I am revoking the defendant's probation because of the previous hearing." In short, there can be no fallback to the hearing on the State's motion to revoke, using something from the hearing as a reason to revoke the defendant's probation.

**7.** Though not strictly a fourth alternative, nevertheless, if all of the parties, including the trial judge, were in agreement, the cause could be reset *prior to the hearing,* until a future date.

the above "true" rule of law would cause trial courts of this State to discontinue granting probations, nor will it cause trial courts to cease giving probationers "second chances." In summary, all the above means is that if a trial judge has found that a probationer has violated his probation, the trial judge will then be confronted with what avenue to take, i.e., (1) send the probationer to the penitentiary, or (2) continue the probationer on probation, thus granting to the probationer that "second chance."[8]

All avenues easily rest within the trial court's discretion. But, let us look at the "second chance" avenue, i.e., the continuing of the probation. What are its consequences? It should be obvious to anyone that the probationer is still under the same conditions of probation originally imposed, or possibly, since the hearing, modified conditions of probation. If the probationer later breaches his "second chance" contract with the trial court, after he is continued on probation, all that the trial court must do is administratively cause a motion to revoke the probation to be filed, cause a warrant of arrest to issue, and thereafter hold a hearing to determine if the probationer breached his second contract. And, after the hearing, if it is found that the probationer did in fact breach his "second contract" the trial court may then, once again, invoke any of the above avenues available to him. I recognize that this may work a slight hardship on some trial courts, but to afford a probationer due process and due course of law, as we must, see, E.g., *Whisenant v. State*, 557 S.W.2d 102 (Tex.Cr.App.1977), "slight hardships" are and should be overlooked in our system of constitutional criminal law. I believe that if a trial court is a "second chance" court, the above will not unduly interfere with the court's regular business. If the trial court is *not* a "second chance" court, then the above will not have any effect whatsoever. Even those trial courts which were characterized and labeled "a no second chance court" were not affected by *Feldman.* If a trial court falls within the middle ground area, then I believe that those trial courts, when they are concerned enough with a particular probationer, who may be characterized as a "technical violator," or even a "non-technical violator" for that matter, will not seriously be affected by the slight hardships imposed. In conclusion, I cannot foresee that the above "true" rule of law will substantially alter how our trial courts are now operating, but I do believe that with the above adhered to no probationer will ever be *sentenced* to the penitentiary without having first been accorded due process and due course of law, to which I believe all judges subscribe when they are sworn into office. I further believe that they thereafter attempt to carry out this subscription in their day to day conduct of the court's regular business.[9]

I, therefore, concur only in the result of the opinion prepared by Judge Roberts.

ODOM, Judge, dissenting.

I dissent to the majority's decision that a prolonged continuance of a hearing on a motion to revoke probation automatically becomes equivalent to a decision to continue the probationer on probation.

---

**8.** As previously noted, I find that there are two other avenues: (3) continuing the hearing until a later date for the sole purpose of obtaining *new* evidence or information, provided that this is done by agreement of the parties, and (4) not holding a hearing at that time and resetting the hearing until a future date, provided this is also done by agreement of the parties. Of course, if the trial judge opts for the third alternative, his ultimate decision on whether or not to revoke the defendant's probation is *limited* to what the *new* evidence or information reveals, and not on what he heard at the hearing on the State's motion to revoke.

**9.** I have concluded upon further reflection that the above "true" rule would exclude only two types of trial judges: (1) those who do not believe in a "second chance" and (2) those who could be characterized as otiose trial judges. As I do not know of a single trial judge in this State who would ever acknowledge being otiose, the above will actually exclude only "no second chance" trial courts. But then, the "second chance" rule enacted by this Court in the past was never meant to apply to those trial courts anyway. Furthermore, if there is a trial court who fits the label of being an otiose trial court, then he can always invoke the fourth avenue I have set forth above.

As the majority acknowledges, the language of Art. 42.12, Sec. 8(a), V.A.C.C.P., specifically distinguishes between a decision to continue the probation revocation hearing and a decision at the conclusion of such a hearing to continue the probation itself. Yet in disregard of this statutory distinction, the majority holds that "a *prolonged* 'continuance of the hearing'" (emphasis added) transforms a continuance of the hearing into a continuation of the probation, and divests the trial judge of his discretionary authority under the statute to "continue, modify or revoke the probation." This process of automatic conversion of a continuance to a continuation of probation apparently takes place regardless of the intent of the court and the parties at the time the continuance is granted.

The mere passage of time, beyond the point at which the continuance becomes "prolonged" (whatever that is and however it is determined), apparently activates some principle of due process estoppel that prohibits the trial court from completing its previously instituted jurisdiction over the pending motion to revoke *even though the probationer took no step to assert any right to speedy disposition of the motion.* Even the statutory rights to a speedy hearing on the motion to revoke, Art. 42.12, Sec. 8(a), V.A.C.C.P., and to a speedy trial, Art. 32A.02, Sec. 3, V.A.C.C.P., must be asserted by timely motion or be waived by silence. Now the majority, without statutory basis, institutes an absolute right to speedy disposition of a pending hearing to revoke probation and in the same act establishes automatic relief for violation of the new right: the automatic award of a continuation of the probation.

This arbitrary restriction of the trial judge's discretionary control over probation and revocation of probation will produce a reluctance to grant probation, a reluctance to allow a continuance of probation revocation hearings, and a reluctance to give doubtful probationers a second chance. While today's appellant may receive a temporary advantage by today's holding, he and others similarly situated will in all probability be disadvantaged by the majority decision, since when the door on a deferred exercise of the discretion to continue, modify or revoke the probation is slammed shut, the second chance afforded by that discretion will be shut out as well.

To the majority's establishment of an arbitrary and standardless automatic cutoff of continuances in probation revocation hearings, to its disregard of the intent of the trial court and parties, to its creation of a new unwaivable right to a speedy disposition of the revocation hearing, and to its unwarranted intrusion into the trial court's discretionary power to continue, modify or revoke probation, I respectfully dissent.

TOM G. DAVIS, DALLY and W.C. DAVIS, JJ., join this dissent.

### OPINION ON STATE'S SECOND MOTION FOR REHEARING

McCORMICK, Judge.

■ Like the majority on the State's original motion for rehearing, we agree that the distinction between "continuing the probation" and "continuing the hearing" is irrelevant to the question of what process is due when the trial court finally takes away the probationer's liberty. Further, we agree with the majority on original rehearing that due process mandates another determination that the probationer has breached the conditions of probation *after* he has been returned to probation (or that there is newly discovered evidence of a previous violation which was not known at the time of the first revocation hearing). And this new determination must occur at another revocation hearing for which the probationer has been served with a new motion to revoke giving him proper notice as required by due process.

■ However, an appellant cannot complain on appeal of the failure of the trial court to hold such a hearing when he has not preserved his error in the trial court by making some type of due process objection, either at the time the judge continues the hearing and/or probation, or at the time of

actual revocation or at the time of sentencing. Failure to make such an objection waives any error.

The record in the case at bar shows that neither appellant nor his attorney voiced any objections to the procedure used by the trial judge. Indeed they urged it. The record shows that appellant pled true to the charges of violating his probation, entered into a stipulation of the evidence, and then testified to the circumstances surrounding the violations of his probationary conditions. Under questioning by defense counsel, appellant testified as follows:

"Q. Do you feel like that if the judge does give you another chance that you can get up, go to work every day, and keep this job?

"A. Yes, sir.

"Q. Will you?

"A. Yes, sir. And keep up my probation within the law."

The record shows that the appellant's mother and uncle had found a job and a place for appellant to live should the trial court see fit to continue appellant's probation. The defense attorney told the court that his own son would take the responsibility for providing transportation for appellant for the next few weeks so appellant could work and continue on probation. When the trial judge informed appellant that he was giving appellant sixty days "to straighten up", appellant replied:

"THE DEFENDANT: Yes, sir. That's fair enough, sir."

The record shows the following occurred sixty days later on September 26, 1980:

"THE COURT: Let the record reflect that this is the case of The State of Texas versus Steve Rogers, Cause No. 6154–B, on the State's motion to revoke probation. This is a continuation of a hearing that was had on June 26, 1980. Is there any reason why sentence should not be pronounced at this time?

"MR. LINDSEY: (Defense Attorney) No, your Honor."

No additional evidence was heard by the court. The court then proceeded to enumerate the conditions of probation which appellant had violated and ordered that appellant's probation be revoked. Once again there was no objection by appellant or his counsel. Sentencing was held on October 10, 1980. At sentencing, after both sides announced ready, the court asked:

"THE COURT: Is there any reason why sentence should not be pronounced at this time?

"MR. LINDSEY: (Defense Attorney) No, your Honor."

Despite several opportunities, no objection was made by the defense as to the procedure used in this probation revocation.

■ It is a general rule that appellate courts will not consider any error which counsel for accused could have called, but did not call, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. *Esquivel v. State,* 595 S.W.2d 516 (Tex.Cr.App.1980), cert. denied 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980).

"The purpose of an objection is to challenge the correctness of the action by the trial court to the end that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for its review, if necessary, by the appropriate appellate tribunal; and the accused cannot remain silent, gambling on his chances for a favorable verdict, and then, when the verdict has gone against him, raise objections which he knew of and which could have been raised during trial." 24 C.J.S., Criminal Law, Section 1670, at page 1063.

This general rule also applies to constitutional questions. *Mendoza v. State,* 552 S.W.2d 444 (Tex.Cr.App.1977); *Thompson v. State,* 537 S.W.2d 732 (Tex.Cr.App.1976). In *Dunlap v. State,* 477 S.W.2d 605 (Tex.Cr.App.1971), this Court held that a defendant could not raise for the first time on appeal a ground of error alleging that he was deprived of his rights under the Sixth and Fourteenth Amendments because of improper identification procedures. And in *Crawford v. State,* 617 S.W.2d 925 (Tex.Cr.App.1981) (Opinion on Rehearing), this

Court held that failure to object to the improper exclusion of a prospective juror in a capital murder case waived the error for purposes of appeal. Judge Tom Davis wrote:

"In *Boulware v. State,* 542 S.W.2d 677 [(Tex.Cr.App.)], this Court stated the following:

"'In view of the recent decision of the Supreme Court of the United States that a constitutional guarantee may be waived by a defendant's counsel for the failure to object such as to the improper organization of a grand jury at the trial level and our decisions above discussed on waiver, we hold that the failure to object to the improper exclusion of a venire member waives that right and it cannot be considered on appeal, *Hovila v. State,* [532 S.W.2d 293 (Tex. Cr.App.)], and all cases insofar as they hold to the contrary are overruled. See also *Tezeno v. State,* [484 S.W.2d 374 (Tex.Cr.App.)]...'" 617 S.W.2d, at 939

See also *Bass v. State,* 622 S.W.2d 101 (Tex. Cr.App.1981).

In *Darland v. State,* 582 S.W.2d 452 (Tex. Cr.App.1979), the Court held that where appellant had not presented a motion to suppress to the trial court, nor had objected to the introduction of the evidence (a urine sample), appellant had waived his complaint of a Fourth Amendment breach on appeal. Also, *Pizzalato v. State,* 513 S.W.2d 566 (Tex.Cr.App.1974). And in *Branch v. State,* 477 S.W.2d 893 (Tex.Cr.App.1972), this Court held the contemporaneous objection rule applied in appeals from orders revoking probation. On appeal, Branch contended that marihuana introduced into evidence at his revocation hearing had been seized in violation of his constitutional rights protecting him from unlawful searches and seizures. The Court found that since no timely objection had been raised during the revocation hearing nothing was presented for review.

The same analysis is applicable to alleged due process violations. Thus, in the present case, since appellant failed to voice any due process objection to the procedures used by the trial court, we hold that he waived his complaint. Thus, the State's motion for rehearing is granted and the order revoking appellant's probation is affirmed.

ONION, P.J., and ROBERTS, CLINTON and TEAGUE, JJ., dissent.