**Ex Parte Kevin Todd CATHAM, Applicant.**

**No. 74,127.**

Court of Criminal Appeals of Texas.

Nov. 7, 2001.

Kevin Todd Catham, Pro Se.

James Farren, DA, Canyon, Matthew Paul, State's Attorney, Austin, for State.

### OPINION

HERVEY, J., delivered the opinion of the Court, in which MEYERS, PRICE, COCHRAN, JOHNSON, KEASLER and HOLCOMB, JJ., joined.

This cause was remanded to the habeas court to determine whether applicant's pa-

role was revoked without a hearing. We will grant habeas corpus relief.

The applicant was paroled in December 1999. In May 2000 the Board of Pardons and Paroles (the Board) sought to revoke his parole. In June 2000 a parole revocation hearing was held and findings were made, supported by the record, that the applicant had violated his parole. Instead of revoking the applicant's parole, the Board sent him to an Intermediate Sanction Facility (ISF) where he was soon accused of assaulting an ISF resident. In August 2000 an ISF disciplinary hearing was held by an ISF hearing officer who made findings, again supported by the record, that the applicant committed the assault. The ISF hearing officer recommended proceeding to a revocation hearing to revoke the applicant's parole. In September 2000 the Board, without a hearing, revoked the applicant's parole, based on the assault committed in the ISF and on the earlier parole condition violations that precipitated placement in the ISF.

A habeas corpus application was filed claiming the Board's decision to revoke his parole without a hearing violated federal constitutional due process principles. The habeas court concluded that the applicant failed to prove "that he was denied due process since he was provided with a separate parole revocation hearing and a separate disciplinary hearing." The habeas court also found that the revocation of the applicant's parole in September 2000 without another hearing "was authorized under Section 508.283 of the Texas Government Code because a parole panel had already held a [parole revocation] hearing under Section 508.281 of the Texas Government Code" in June 2000.

When a parolee violates the conditions of his parole, Section 508.283 authorizes the Board to "continue, revoke or modify" the parole following a Section 508.281 hearing. Under the habeas court's interpretation of these statutes, the Board can impose additional Section 508.283 sanctions at any time without a hearing, if at some earlier time, a Section 508.283 sanction has been imposed following a Section 508.281 hearing.

This interpretation of these statutes is inconsistent with *Morrissey v. Brewer's* federal constitutional due process principles requiring that a parolee have an opportunity to be heard before a "final decision on revocation by the prison authority." *See Morrissey v. Brewer*, 408 U.S. 471, 487–88, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *see also Rogers v. State*, 640 S.W.2d 248, 251–56 (Tex.Cr.App.1982) (op. on first reh'g motion) and at 263 (op. on second reh'g motion). These statutes also require a Section 508.281 hearing each time Section 508.283 sanctions are sought. *See* Tex. Gov't Code, Sec. 311.021(1) (it is presumed that Legislature intends compliance with United States Constitution when it enacts a statute).

We, therefore, hold that the revocation of this applicant's parole without a hearing was inconsistent with Sections 508.281 and 508.283 and federal constitutional due process principles. Habeas corpus relief is granted, the order revoking this applicant's parole shall be set aside, and this case is remanded to the Board for proceedings consistent with this opinion.

KELLER, P.J., filed a dissenting opinion.

WOMACK, J., dissented.

KELLER, P.J., dissenting.

The trial court found that applicant was informed at the ISF facility that his parole could be revoked if he violated any of the ISF disciplinary rules. This finding is supported by the trial court's exhibit II, an

affidavit by Eduardo Avilo, which states that "[u]pon arrival at the El Paso Intermediate Sanction Facility, Offenders are informed that if a determination is made that an Offender has violated a facility disciplinary rule, the finding could result in the Offender's return to prison." When applicant assaulted a fellow resident of the ISF facility, a disciplinary hearing was held, and applicant was afforded all the protections at this hearing that due process would require in connection with a revocation hearing. Applicant pled guilty at this disciplinary hearing. Although the parole board did not afford applicant another "revocation" hearing, the disciplinary hearing gave applicant an adequate forum to confront the allegations that formed the basis for revoking his parole. Under the circumstances, I would find that applicant was afforded all the process due under the law.[1]

1. Had applicant been informed that his parole could be revoked after a disciplinary hearing but without another revocation hearing, the situation would be analogous to that in *Speth v. State*, 6 S.W.3d 530 (Tex.Crim.App.1999), wherein we held that a defendant who failed to object to a condition of probation at the time it was imposed could not complain about the condition on appeal. What we said there about the contractual nature of community supervision is true also of parole: "An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant. Therefore, conditions not objected to are affirmatively accepted as terms of the contract. Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable."

The Board of Pardons and Paroles could have revoked applicant's parole and returned him to prison immediately upon the initial finding that he had violated a condition of parole. The procedure which the Court today disallows could be described as a sort of informal deferred-adjudication-type mechanism. It was to applicant's benefit and to the benefit of the many people who welcomed a second chance to stay out of prison by going to an ISF. The Court's opinion will result either in more revocation hearings or in fewer second chances. I will not be surprised if it turns out to be the latter.