In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00064-CR


______________________________




GENNARIO FERRALEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 114th Judicial District Court


Smith County, Texas


Trial Court No. 114-2145-07




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Gennario Ferralez (the appellant) guilty of driving while intoxicated (DWI). 
See Tex. Penal Code Ann. § 49.04 (Vernon 2003). The appellant admitted he had been twice
previously, finally, and sequentially convicted of DWI. This made the appellant's current conviction
a felony offense. See Tex. Penal Code Ann. § 49.09 (Vernon Supp. 2008). The appellant also
admitted he had been twice previously, finally, and sequentially convicted of a felony offense. This
fact thus made the appellant eligible for punishment applicable to first-degree felonies; the jury
assessed the appellant's punishment at seventy-five years' imprisonment. See Tex. Penal Code
Ann. § 12.42(d) (Vernon Supp. 2008). The appellant now contends that the evidence admitted at
trial against him was legally and factually insufficient to support his conviction and that the trial
court erred by admitting unsolicited evidence of a prior felony DWI conviction during the
guilt/innocence phase of the trial. We overrule these issues and affirm the trial court's judgment. (1)

I. Evidentiary Sufficiency

 In his first two issues, the appellant contends the evidence is legally and factually insufficient
to establish that he operated a motor vehicle while intoxicated. 

 A legal sufficiency review requires an appellate court to ask "whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,
319 (1979). This standard mandates the reviewing court to accord deference to the fact-finder's duty
to resolve conflicts in testimony and other evidence. Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007). This review standard requires an examination of all the evidence, both that which
was properly admitted and that which was improperly admitted, to determine whether the cumulative
force of all the evidence (direct, circumstantial, or both) supports the verdict when such evidence is
viewed in the light most favorable to that verdict. Id.; see also Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007). In legal sufficiency claims, it is often helpful to measure the evidence
against the elements of the offense with the same kind of analysis as that applied in the test for a
hypothetically-correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment,
does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's
theories of liability, and adequately describes the particular offense for which the defendant was
tried." Id.

 A factual sufficiency review has subtle differences. "Evidence may be factually insufficient
if: '1) it is so weak as to be clearly wrong and manifestly unjust or 2) the adverse finding is against
the great weight and preponderance of the available evidence.'" Berry v. State, 233 S.W.3d 847, 854
(Tex. Crim. App. 2007) (quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). "Such
a factual sufficiency review requires the reviewing court to consider all of the evidence." Id.
(quoting Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). "A clearly wrong and
unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly
demonstrates bias." Id. (quoting Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003);
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). Like the legal sufficiency review
process, the hypothetically-correct jury charge construct can be employed in analyzing the factual
sufficiency of the evidence. Vega v. State, 267 S.W.3d 912, 916 (Tex. Crim. App. 2008). 

 Our law states that a person "commits an offense if the person is intoxicated while operating
a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04. The term "intoxicated" means,
among other things, "not having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or
more of those substances, or any other substance into the body . . . ." Tex. Penal Code Ann.
§ 49.01(2)(A) (Vernon 2003). The relevant part of the indictment alleged the appellant had
"operate[d] a motor vehicle in a public place while . . . intoxicated by not having the normal use of
mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug,
a dangerous drug, a combination of two or more of those substances, or any other substance into his
body . . . ." The applicable hypothetically-correct jury charge would therefore require the State to
bring forth proof of the following elements: that (1) the appellant, (2) operated, (3) a motor vehicle,
(4) in a public place, (5) while intoxicated. With this framework in mind, we turn now to a review
of the evidence admitted at trial.

 Robert Hartman, a trooper for the Texas Department of Public Safety (DPS) since 2004,
testified first. (2) Hartman told the jury that he had been on patrol the evening of August 8, 2007, in
Smith County, Texas, when he stopped the appellant's motor vehicle because the vehicle had a
defective stoplamp. See Tex. Transp. Code Ann. § 547.323 (Vernon 1999). Hartman also said he
witnessed Ferralez make a turn without first signaling the turn. See Tex. Transp. Code Ann.
§ 545.104 (Vernon 1999). Hartman told the jury that the appellant said he had been painting a
residence earlier in the day. During his roadside discussion with the appellant, Hartman reported
smelling the "strong odor" of alcohol coming from the appellant's breath. The appellant later
admitted to having had one beer after he had stopped working earlier in the day. He also admitted
to having been spraying lacquer paint all day, which the appellant believed had made him feel
"high." 

 Hartman asked Ferralez to perform several standardized field-sobriety tests. During the
horizontal gaze nystagmus (HGN) test, Hartman reportedly observed the appellant show six of six
clues, which Hartman testified was a strong indicator that the appellant was intoxicated. According
to Hartman, a person fails the HGN test if he shows as few as four out of the six clues. Hartman said
he believed Ferralez had more than one beer to drink on the night in question. (3) 

 Hartman next asked the appellant to perform the walk-and-turn test. The appellant made
several errors (including an inability to maintain his balance during the instruction phase) and
ultimately admitted that he could not complete the test because he was high on lacquer fumes,
suggesting to Hartman that the appellant had failed that field-sobriety test. (4) 

 Hartman then asked the appellant whether he believed it was safe for him to have been
driving; the appellant responded, "No, not really." (5) Based on the interviews and the appellant's
performance during the three standardized field-sobriety tests, Hartman concluded that the appellant
had lost the normal use of his mental and/or physical faculties, was impaired, and that he could not
safely operate a motor vehicle. The appellant was then arrested for DWI. At the jail, the appellant
refused to provide a blood specimen for purposes of testing the alcohol concentration. 

 On cross-examination, Hartman admitted that the appellant had not been slurring his words
on the night in question, that he had not stumbled or staggered as he walked, that his eyes were not
glassy or bloodshot, and that he had not been weaving his car all over the road. Our review of the
videotape of the traffic stop confirms most of these concessions by the trooper. Hartman also stated,
in response to defense counsel's questioning, that the officer observed the appellant "shaking, which
is an impairment of physical ability, due to him spraying paint lacquer." We, however, could not
independently observe the appellant shaking, but the quality of the videotape submitted with the
appellate record was not of the highest grade.

 On re-direct, Hartman told the jury that it is possible for someone who is high on something
such as lacquer paint to lose the normal use of his physical and/or mental faculties. He also told the
jury that not everyone he arrests for DWI has glassy or bloodshot eyes, slurred speech, or swerved
all over the roadways. 

 Steven Hodge, another state trooper with the DPS, testified about the relevant events he
witnessed on August 8, 2007. Hodge identified the appellant as being the person who was driving
the vehicle stopped by Hartman. Hodge's post-arrest inventory search of the appellant's vehicle
uncovered no evidence of alcoholic beverages. 

 Barbara Ferralez (Barbara) testified on her husband's behalf. Barbara married the appellant
the month following his arrest on the current charge. She told the jury that she had spoken on the
telephone with the appellant several times on the day in question; he never sounded as if he was
drunk or intoxicated. On cross-examination, she admitted that he occasionally comes home "high"
from lacquer and paint fumes. 

 Rayshell Mecaskey shared an apartment with the appellant at the time he was arrested in
connection with this case. (6) She told the jury that the appellant left the apartment on the date in
question around 8:45 p.m. to take "some soda and some crackers" to Barbara, who was sick. 
Mecaskey reported that the appellant did not appear to have been drinking or "high" on anything at
the time he left. His demeanor "was just like normal every day" and she did not believe the appellant
was "high" at the time. She did admit, however, that the appellant smelled strongly of paint or
lacquer; she even had to open several windows to help alleviate the pungent odor that he had brought
with him into their shared apartment. 

 After reviewing all the evidence using the appropriate appellate standards, we conclude the
jury had before it both factually and legally sufficient evidence to find that (1) the appellant,
(2) operated, (3) a motor vehicle, (4) in a public place, (5) while intoxicated. While it is true that
there was no evidence that the appellant was weaving all over the road, had bloodshot eyes, was
slurring his speech, or was stumbling over himself as he exited his vehicle on the night in question,
the jury nonetheless had before it other evidence upon which it could reasonably conclude the
appellant was guilty of the charged offense. This evidence included Hartman's testimony and the
videotape that corroborated many facts to which the officer testified. We cannot say this appellate
record leads us to conclude the jury's verdict was manifestly unjust, shocks the conscience, or
demonstrates bias. Accordingly, we overrule the appellant's first and second issues.

II. Admitting Evidence of the Appellant's Previous Felony DWI Conviction

 In his last point of error, the appellant contends the trial court erred by admitting, during the
guilt/innocence phase of trial, unsolicited evidence of his prior felony conviction for DWI. The State
responds by arguing that the appellant opened the door to such questioning. 

 We review a trial court's decision to admit or exclude extraneous-offense evidence under an
abuse of discretion standard. Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). "An
appellate court would misapply the appellate abuse of discretion standard of review by reversing a
trial court's admissibility decision solely because the appellate court disagreed with it." Id. An
appellate court may not conclude that the trial court abused its discretion unless the lower court's
ruling fell outside the zone of reasonable disagreement. Id.; see also Lopez v. State, 261 S.W.3d 103,
110 (Tex. App.--San Antonio 2008, pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372,
390-92 (Tex. Crim. App. 1991) (op. on reh'g)). Our Rules of Evidence prohibit the admission of
extraneous-offense evidence except under certain conditions:

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, provided
that upon timely request by the accused in a criminal case, reasonable notice is given
in advance of trial of intent to introduce in the State's case-in-chief such evidence
other than that arising in the same transaction.


Tex. R. Evid. 404(b). 

 The basis upon which the State wishes to solicit extraneous-offense evidence may not be
elicited through "prompting or maneuvering" by the State during its cross-examination of a witness;
instead, the proffered reason for the State's asserted need for the extraneous-offense evidence must
find its genesis in the direct examination testimony solicited by the defense. Wheeler v. State, 67
S.W.3d 879, 885 & n.14 (Tex. Crim. App. 2002) (referencing Shipman v. State, 604 S.W.2d 182,
185 (Tex. Crim. App. 1980); Mares v. State, 758 S.W.2d 932, 936 (Tex. App.--El Paso 1988, pet.
ref'd)).

 During guilt/innocence, and over the appellant's objection, the trial court permitted the State
to ask Barbara about her husband's prior felony DWI conviction. The trial court ruled that the
appellant had opened the door based on the defense counsel's earlier direct examination questions
of Barbara. The specific testimony upon which the trial court based its ruling was as follows:

 Q [By Defense Counsel] Can you tell the jury about [the appellant's]
drinking habits?

 

 A [Barbara Ferralez] It's very rare on occasion. Sometimes he'll have,
you know, a couple of beers or whatever, but, no, he does not drink.

 

 Q So do you keep any kind of liquor or beer around the house?

 

 A No, sir.

 

 Q To the best of your knowledge, when he was living with this other
person, right before he got married, did he keep beer or liquor around the house?

 

 A No, sir.


On cross-examination, after first obtaining permission from the trial court to go into the now-at-issue
extraneous-felony conviction evidence, the following exchange occurred:

 Q [By State] . . . According to you and your opinion and from personal
knowledge of the defendant, you said that he doesn't drink and get intoxicated?

 

 A [Barbara] No, sir.

 

 Q No? 

 Are you aware of the fact that on May 6th, 2003, he was sentenced to
five years in the Texas Department of Corrections for felony DWI?

 

 A Yes, sir.

 

 Q And it's still your opinion that he doesn't get intoxicated and drink?

 

 A No, sir.

 

 Q Let me ask you this: You said that he doesn't drink, yet you have
heard him intoxicated. How do you explain that?

 

 A I didn't say that he does not drink. I said he drinks on occasion. A
couple -- he might have a couple of beers on occasion after work but not to the point
of intoxication, no. (7) 

The State solicited similar testimony about the appellant's five-year felony DWI prison term during
cross-examination of Mecaskey after Mecaskey had earlier testified that she never saw the appellant
intoxicated and did not allow alcohol to be brought into their apartment. 

 The appellant's direct examination of his wife (and later his direct examination of Mecaskey)
left the jury with the impression that the appellant rarely drinks or gets intoxicated and that he is
rarely even around alcoholic beverages. The State's cross-examination was arguably relevant to
impeach and discredit the witnesses' characterizations of the appellant as someone who rarely drinks
and never gets intoxicated. "When a witness presents a picture that the defendant is not the type of
person to commit the charged offense, the prosecution may impeach that witness' testimony by
cross-examining the witness concerning similar extraneous offenses." Wheeler, 67 S.W.3d at 885
& n.1 (referencing McIlveen v. State, 559 S.W.2d 815, 822 (Tex. Crim. App. 1977)). While one
might reasonably characterize the State's cross-examination questions as "prompting and
maneuvering" designed to open the door to this extraneous felony, one might also fairly characterize
the appellant's direct examination of Barbara and Mecaskey as opening the door (even if ever so
slightly) to this line of questioning. Thus, under the applicable standard of review, we must conclude
no abuse of discretion has been shown. We overrule the appellant's third and final issue. (8)

III. Conclusion

 For the reasons stated, we conclude legally and factually sufficient evidence supports the trial
court's judgment. We similarly hold the record before us does not demonstrate the trial court abused
its discretion by admitting evidence of the appellant's prior conviction for felony DWI because,
arguably, the appellant's direct examination of both Barbara and Mecaskey opened the door to such
evidence. There being no other issues raised, we affirm the trial court's judgment.




 Bailey C. Moseley

 Justice



Date Submitted: February 13, 2009

Date Decided: February 25, 2009


Do Not Publish
1. Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court
by the Texas Supreme Court pursuant to its docket equalization efforts. See Tex. Gov't Code Ann.
§ 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court
of Appeals and that of this Court on any relevant issue. See Tex. R. App. P. 41.3.
2. Hartman also told the jury that he previously worked as a deputy with the Smith County
Sheriff's Department for three and a half years. 
3. Hartman reported that Ferralez did not show any vertical nystagmus. Vertical gaze
nystagmus (VGN) testing results can suggest the presence of certain types or classes of illegal
narcotics, and/or the presence of an extremely high level of alcohol. See generally State v. Neesley,
239 S.W.3d 780, 788 & n.3 (Tex. Crim. App. 2007) (Keller, J., concurring) (observation of vertical
nystagmus later confirmed by laboratory testing showing defendant had ingested cocaine and
marihuana); Burkett v. State, 179 S.W.3d 18, 23 (Tex. App.--San Antonio 2005, no pet.) (police
officer used VGN testing to look for signs of excessive alcohol consumption).
4. The appellant was unable to perform the third test, described by the officer as the walk-and-turn test. 
5. When asked why he had not been using a respirator while spraying lacquer paint, the
appellant reportedly stated that he had run out of respirator filters and therefore had to spray the
lacquer without the use of protective equipment. An inventory search of the appellant's vehicle
revealed a new package of respirator filters on the front seat of the appellant's vehicle. 
6. Mecaskey and the appellant were not romantically involved. 
7. Later, the trial court denied the State's request to ask a different witness about the appellant's
prior robbery conviction. The trial court concluded that the witness's testimony had opened the door
to such evidence, but that court further held the probative value of such evidence was substantially
outweighed by its danger of unfair prejudice. See Tex. R. Evid. 403. The robbery conviction was,
therefore, properly excluded by the trial court from admission during guilt/innocence.
8. The appellant also makes the argument that the probative value of admitting the prior felony
DWI conviction was substantially outweighed by its danger of unfair prejudice, in violation of Rule
403(b) of the Texas Rules of Evidence. The record before us does not show the appellant raised this
issue in the trial court and thus the appellant has failed to preserve it for our review. Cf. Mendez v.
State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).



td_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00038-CR

                                                ______________________________

 

 

                              CALVIN WAYNE BURNHAM,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2005-C-0001

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Calvin
Wayne Burnham was charged with four counts of aggravated sexual assault and
four counts of indecency with a child, his stepdaughter.[1]  Pursuant to a plea of guilty on all counts,
he was placed on deferred adjudication community supervision for a period of ten
years.  Burnham appeals the trial courts
subsequent revocation of community supervision, adjudication of guilt, and
resulting sentence of fifty years imprisonment for each aggravated sexual
assault and twenty years imprisonment for each count of indecency with a
child.  He claims that the trial court
erred in considering evidence resulting from a polygraph examination, erred in
adjudicating the Appellant guilty based on evidence received at a hearing that
had occurred over seven months earlier, and that the evidence was insufficient
to demonstrate he violated a condition of his community supervision.  We affirm the trial courts judgment.  

I.          Standard of Review 

            The
determination of an adjudication of guilt is reviewable in the same manner as
that used to determine whether sufficient evidence supported the trial courts
decision to revoke community supervision. 
See Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp.
2010).  While the decision to revoke
community supervision rests within the discretion of the trial court, it is not
absolute.  In re T.R.S., 115 S.W.3d 318, 320 (Tex. App.Texarkana 2003, no
pet.).  To revoke community supervision,
the State must prove every element of at least one ground for revocation by a
preponderance of the evidence.  Tex. Code Crim. Proc. Ann. art. 42.12,
§ 10 (Vernon Supp. 2010); T.R.S., 115
S.W.3d at 320; Johnson v. State, 943
S.W.2d 83, 85 (Tex. App.Houston [1st Dist.] 1997, no pet.).  Preponderance of the evidence has been
defined as the greater weight and degree of credible testimony.  T.R.S.,
115 S.W.3d at 320.

            In
a revocation hearing, the trial judge is the sole trier of the facts and
determines the credibility of the witnesses and the weight to be given to the
testimony.  T.R.S., 115 S.W.3d at 321; Lee
v. State, 952 S.W.2d 894, 897 (Tex. App.Dallas 1997, no pet.); Johnson, 943 S.W.2d at 85.  The judge may accept or reject any or all of
a witnesss testimony.  T.R.S., 115 S.W.3d at 321 (citing Mattias v. State, 731 S.W.2d 936, 940
(Tex. Crim. App. 1987)).  Considering the
unique nature of a revocation hearing and the trial courts broad discretion in
the proceedings, the general standards for reviewing sufficiency do not
apply.  Pierce v. State, 113 S.W.3d 431, 436 (Tex. App.Texarkana 2003,
pet. refd).  Instead, we review the
trial courts decision regarding community supervision revocation for an abuse
of discretion and examine the evidence in a light most favorable to the trial
courts order.  T.R.S., 115 S.W.3d at 321; Garrett
v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981); Pierce, 113 S.W.3d at 436. 
If the States proof is sufficient to prove any one of the alleged
community supervision violations, the revocation should be affirmed.  T.R.S.,
115 S.W.3d at 321 (citing Stevens v. State,
900 S.W.2d 348, 351 (Tex. App.Texarkana 1995, pet. refd)); Pierce, 113 S.W.3d at 436.

II.        Court Could Consider Evidence from
Hearing on First Motion to Adjudicate Guilt

 

            As
a preliminary matter, Burnham complains that the trial court improperly considered
evidence from a hearing on the States first amended motion to adjudicate
guilt, in which his competency was timely questioned.  At the beginning of the hearing, the trial
court appointed Dr. Frank S. Murphy to examine Burnham.  Due to the requested competency examination,
Burnhams counsel told the court he would not be able to go forward today and
requested a continuance of the hearing. 
The trial court granted the continuance, but allowed Kelly B. Hendricks,
the polygraph examiner, to testify because he had travelled 180 miles to attend
the hearing scheduled that day.  Counsel
was allowed to reserve objections to the testimony.  After the hearing, Dr. Murphy concluded that
Burnham was competent, but recommended treatment for bipolar disorder,
prompting agreement between Burnham and the State to reset the hearing for a status
evaluation at a later date.  Prior to
the status evaluation, the State filed a second amended motion to adjudicate
guilt.  

            Burnham
argues that the trial court erred in considering Hendricks testimony during
the hearing on the first motion to adjudicate, before resolving competency
issues.  To support his argument, Burnham
cites Rogers v. State.  640 S.W.2d 248 (Tex. Crim. App. [Panel Op.] 1981).  In Rogers,
the court found the trial court was without authority to subsequently revoke
community supervision in the absence of allegations or proof of subsequent
violations where it had previously decided to continue the defendant upon
community supervision.  Id. at 252 (op. on rehg); Rains v. State, 678 S.W.2d 308 (Tex.
App.Fort Worth 1984, pet. refd) (same). 
In other words, in the absence of other allegations, a trial court
cannot simply change its mind and revoke community supervision once it has
decided not to do so.  Here, because the
revocation hearing was reset pursuant to agreement, and the second amended
motion to revoke contained new allegations, Rogers
does not apply.  Bersuch v. State, 304 S.W.3d 547, 548 (Tex. App.Waco 2009, pet. refd).  

            Instead,
the Texas Court of Criminal Appeals has held that in a second revocation
hearing, a trial judge may take judicial notice of evidence obtained in a prior
revocation proceeding, provided that he presided over both hearings.  Torres
v. State, 595 S.W.2d 537 (Tex. Crim. App. [Panel Op.] 1980); see Cisneros v. State, 697 S.W.2d 718,
720 (Tex. App.Corpus Christi 1985, no pet.). 
The same trial judge presided over both motions to adjudicate
guilt.  Thus, the trial court did not err
in considering evidence obtained at the hearing on the first amended motion
when adjudicating guilt based on the States second amended motion.  

III.       Polygraph Results Are
Inadmissible 

            Because
of their inherent unreliability and tendency to be unduly persuasive, Burnham
is correct in reciting the rule that polygraph examination results are
inadmissible for any purpose in a criminal proceeding on proper objection.  See
Shiflet v. State, 732 S.W.2d 622, 630 (Tex. Crim. App. 1985).  

            There is a
question of whether Burnham failed to preserve the point of error.  Jasso
v. State, 112 S.W.3d 805, 81314 (Tex. App.Houston [14th Dist.] 2003,
pet. refd).  We note that Hendricks was
allowed to testify with the courts condition that counsel was able to reserve
objections.  When Burnhams counsel
specifically objected to the admissibility of the polygraph results, the trial
court stated, Again, Im just giving you, Counsel, an opportunity to see what
hes going to say.  . . . .  You can reserve your objections.  . . . . 
And Ill note it, and you can be subject to making objections at a later
time.  The results were received at
this time just for the limited purpose of [Hendricks] testimony.  

            At
the conclusion of the hearing on the second amended motion to adjudicate guilt,
in which the State did not offer the polygraph results, Burnhams counsel asked
to file a brief with the court addressing concerns that the second amended
motion contained allegations not heard at the hearing.  The judge referenced Hendricks testimony and
pointed out that he had heard nothing at the beginning of this that we were
having any objection to that evidence coming in.  He further stated, I was satisfied, since I
havent heard anything to the opposite, about the polygraph that was
administered and the admissions he made subsequent to that.  It is unclear whether the court treated the
results of the polygraph as admitted, and whether it treated counsels request
to file a brief as an objection to the results. 


            Nevertheless,
even assuming that the court erroneously admitted the polygraph results over
proper objection, because we hold below that the evidence was sufficient to
demonstrate violation of at least one condition of community supervision,
Burnham was not harmed by its admission. 
See Tex. R. App. P. 44.2(b); Anderson
v. State, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006).  

IV.       Sufficient
Evidence Supported the Trial Courts Judgment 

            The
States second amended motion to adjudicate guilt claimed that Burnham violated
the following conditions of community supervision requiring him to:  maintain suitable employment; pay an assessed
$1,336.00 fine at a rate of $15.00 per month; pay community supervision fees of
$50.00 each month; submit to sex offender treatment; and commit to sex offender
registration requirements.  

            At
the hearing on the second amended motion to adjudicate guilt, administrative
deputy Heather Green testified that although Burnham was required to report any
change in job status [n]ot later than the 7th day after the date of the change,
he failed to do so.  Shelby and Panola
County community supervision officer Heather Brown stated Burnham was laid off
on December 3, 2008, and failed to provide income verification until
November 2, 2009, indicating Burnham had not worked in almost a year.[2]  She claimed Burnham was absent from sex
offender treatment meetings.[3]  Brown also testified Burnham had failed to
pay fines and community supervision fees pursuant to the courts order.  Without objection, the State admitted
documentation of Burnhams failure to pay, showing arrearages in each case of
between $75.00$185.00, totaling $1,140.00, and administrative notes suggesting
Burnham was sent several failure to pay notices.[4] 

            Most
importantly, the State also claimed that Burnham violated the conditions of
community supervision requiring him to:  avoid
injurious or vicious habits, including abstaining from the possession or use of
all intoxicating beverages and all unlawful possession of alcohol; refrain from
frequenting places where pornographic materials are sold; refrain from
possessing recorded materials for the purpose of deviant sexual arousal; avoid
contact with the victims family; and stay 500 feet from any school.  

            [T]he
result of a polygraph examination is the conclusion based on the machines
graphic indications as to whether the defendant was lying or telling the truth.
 Marcum
v. State, 983 S.W.2d 762, 766 (Tex. App.Houston [14th Dist.] 1998, pet.
refd) (citing Castillo v. State, 739
S.W.2d 280, 293 (Tex. Crim. App. 1987)). 
Statements made to a polygraph examiner during such an examination are
generally admissible.[5]  Id.;
Harty v. State, 229 S.W.3d 849, 851
n.2 (Tex. App.Texarkana 2007, pet. refd); see Shiflet, 732 S.W.2d at 623 (statements against interest made
while not in custody admissible).  

            Hendricks
testified that Burnham made several pre-test and post-test admissions.  Specifically, he admitted to: consuming wine
at Olive Garden, viewing cell phone instant message image photos of girls
sending pictures of their breasts and vaginas . . . about 20 to 30 times; frequenting
several area gas stations or convenience stores that display pornography; and
visiting his brothers house in the evening when school is out because his
brothers house is within 500 feet of a school.  The examiner testified Burnham shop[ped] at
the grocery store where the victims grandmother is the manager, but denied
speaking with her.  Burnham also claim[ed]
that he ha[d] a prescription for Hydrocodone, and admit[ted] possession of
crystal methamphetamine when he poured his dads crystal methamphetamine out on
the ground once whenever he was trying to help his dad get off crystal meth. 

            The
admissions to Hendricks were sufficient for the trial court to find, in its
discretion as sole fact-finder, that Burnham violated at least one condition of
his community supervision by a preponderance of the evidence.  See
T.R.S., 115 S.W.3d at 321.  Thus, we
affirm the revocation and adjudication of guilt.  Id.


V.        Conclusion

            We
affirm the trial courts judgment. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:         December
14, 2010

Date Decided:             December
15, 2010

 

Do Not Publish











[1]Burnham
appeals from this cause number and judgments entered in cause numbers 06-10-00039-CR
through 06-10-00045-CR.  





[2]Burnham
argues that his condition of community supervision did not require him to
maintain suitable employment if searching for a job.  The condition required him to [m]aintain
suitable employment or educational/vocational status; [i]f unemployed and not a
student, comply with the instructions of the Supervision Officer concerning
employment search, education or training, including providing documentation of
such activities.  Though the officer
testified Burnham had tried to find employment, the court was free to
conclude his one-year hiatus from employment of any sort constituted
noncompliance with the condition. 

 





[3]After
Brown testified without objection that Burnham failed to attend sex offender
treatment classes, she was asked what dates he failed to attend.  Because Brown referred to the records to
determine these dates, Burnham lodged a hearsay objection for lack of direct
knowledge.  

 





[4]Burnham
argues that the trial court failed to establish that he was able to pay the
fines and fees.  Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp. 2010).  The record demonstrates Burnham was indigent
and was unemployed until November 2009.  

 





[5]Burnhams
counsel objected to any statements that were made to the examiner, although
the basis for the objection was not stated. 
He further lodged an objection that the examiners total testimony
[w]as a violation of Article 38.22. 
However, because submission to a polygraph examination pursuant to
conditions of community supervision is not a custodial interrogation, Article
38.22 does not apply.  Marcum, 983 S.W.2d at 766.