**Jaime Antonio JASSO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–00747–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 31, 2003.

---

---

Crespin Michael Linton, Houston, for appellants.

Amanda Joy Peters, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Appellant Jaime Antonio Jasso appeals his aggravated-robbery conviction, arguing: (1) the evidence is legally insufficient to support his conviction; (2) a pretrial identification procedure, alleged to have been unduly suggestive, tainted the complainants' in-court identification of appellant; and (3) appellant was entitled to a mistrial because polygraph examination results were revealed at trial. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The complainants, Amanda Cardillo and Catherine Walbom, were robbed at knife-point after leaving a nightclub in the early morning hours. After the establishment had closed, Cardillo and Walbom decided to walk around the block. As they were walking, a red Nissan Pathfinder turned onto the street and parked. Two young Hispanic males emerged from the vehicle and casually approached the women. Holding a knife in his hand, one of the robbers demanded Cardillo's purse. After Cardillo gave him her purse, she ran about fifty feet away and watched as the same robber, still holding the knife, demanded Walbom's purse. After Walbom initially resisted, the robber pulled her purse from her shoulder. As the robbers[1] fled in the Pathfinder, Walbom looked at and memorized the vehicle's license-plate number.

Police traced the license-plate number and discovered the red Pathfinder belonged to appellant's mother. Police set up a photographic lineup and Cardillo and Walbom separately identified appellant as the robber. Police then arrested appellant. Cardillo and Walbom each identified appellant as the robber a second time at a live lineup and a third time at trial.

At trial, Appellant's brother, Fernando Jasso, claimed responsibility for the robbery. The jury found appellant guilty, and

---

1. Walbom and Cardillo testified that, as far as they could see, the second robber did not have a weapon. He stood just behind the man with the knife and held Cardillo's purse while his companion demanded Walbom's purse. Unless otherwise specified, all subsequent references to "the robber" in this opinion are to the knife-wielding robber.

the trial court sentenced him to fifteen years' confinement in the Texas Department of Criminal Justice, Institutional Division.

## II. ISSUES PRESENTED

Appellant presents the following issues for appellate review:

(1) Is the evidence legally sufficient to support appellant's aggravated-robbery conviction?

(2) Did a pretrial identification procedure, alleged to have been unduly suggestive, taint the complainants' in-court identification of appellant?

(3) Was appellant entitled to a mistrial because the results of a polygraph examination were revealed?

## III. ANALYSIS AND DISCUSSION

### A. Was the evidence legally insufficient to support appellant's conviction?

In his first issue, appellant argues the evidence is legally insufficient to support his aggravated-robbery conviction for four reasons: (1) the complainants who identified appellant as the robber each consumed alcoholic beverages before the robbery; (2) the accuracy of the complainants' respective identifications of appellant from the photographic lineups was compromised because appellant's photograph was in position two in both instances; (3) discrepancies existed between appellant's physical appearance and the complainants' description of the robber's appearance; and (4) appellant testified he did not commit the robbery and appellant's brother claimed responsibility for the robbery.

■ In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). We may not overturn the jury's verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991). The jury, as the trier of fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex.Crim.App.1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim.App.1997). The question is not whether a rational jury could have entertained a reasonable doubt of guilt, but whether it necessarily would have done so. *Swearingen v. State*, 101 S.W.3d 89, 96 (Tex.Crim.App.2003).

■ The essential elements of the felony offense of aggravated robbery as charged in the indictment in this case are: (1) a person; (2) in the course of committing theft; (3) with intent to obtain and maintain control of property; (4) knowingly and intentionally; (5) threatened or placed another in fear of imminent bodily injury or death; and (6) then and there used or exhibited a deadly weapon. *See* TEX. PEN.CODE §§ 29.02(a)(2), 29.03(a)(2); *see also Robinson v. State*, 596 S.W.2d 130, 132 (Tex.Crim.App.1980). After thoroughly reviewing the evidence, we conclude that a rational trier of fact could have found appellant committed this offense. Two eyewitnesses, Cardillo and Walbom, testified that appellant demanded their purses at knife-point and then absconded with them. The weaknesses in the evi-

dence to which appellant points do not render the evidence legally insufficient to support his conviction.

### 1. Did intoxication prevent the witnesses from accurately remembering and recounting the robbery?

Appellant first contends the evidence is legally insufficient because Walbom and Cardillo were probably too intoxicated at the time of the robbery to remember it. In support of this argument, appellant points out that Cardillo and Walbom each consumed numerous alcoholic beverages in the six hours preceding the robbery.[2]

Cardillo testified she was slightly intoxicated at the time of the robbery. Cardillo further testified, however, that although she still could feel a little bit of alcohol in her system, it did not affect her ability to observe or recognize the robber. Cardillo could walk in a normal manner and "felt pretty much composed" at the time of the robbery. She indicated that her level of intoxication did not prevent her from accurately remembering and recounting what happened.

The evidence similarly shows that Walbom's memory of events was not compromised either. She testified that her consumption of alcohol that evening did not affect her ability to remember the robbery and that she had no difficulty remembering the license-plate number of the Pathfinder. Walbom's testimony was corroborated in that the license-plate number she provided led police to a red Pathfinder.

Furthermore, Officer David Scales of the Houston Police Department testified that when he interviewed the complainants, approximately forty-five minutes after the robbery, neither of them seemed intoxicated and both women demonstrated normal use of their faculties. Officer Scales interviewed the complainants separately; each of them answered his questions coherently, and their accounts of the robbery were consistent. Though the evidence shows the complainants had consumed significant amounts of alcohol in the six-hour period preceding the robbery, this did not prevent them from remembering and recounting what transpired and it does not render the evidence legally insufficient to support appellant's conviction.

### 2. Was the accuracy of the photographic identification of appellant compromised?

Appellant also argues the evidence is legally insufficient because his photograph was in the second position both in the photographic lineup shown to Walbom and in the photographic lineup shown to Cardillo thirteen days later. Both of the complainants identified appellant as the robber. According to appellant, because the complainants were friends and Walbom testified she and Cardillo spoke about once a week after the robbery, Cardillo probably identified appellant as the robber because of a conversation she had with Walbom after Walbom identified appellant as the robber.

Appellant's argument assumes Walbom told Cardillo she had identified the photograph in the second position and that Cardillo knew appellant's photograph would be in the same position when she viewed the photographic lineup nearly two weeks la-

---

**2.** The robbery took place at about 2:30 a.m. According to Cardillo's testimony, on the night of the robbery she consumed one pear cider before 9:00 p.m. and a whisky sour between 9:00 p.m. and 11:00 p.m. Between 11:00 p.m. and 1:45 a.m., Cardillo drank two "woo-woos" and three whisky sours. According to Walbom's testimony, Walbom drank one beer before 9:00 p.m., one sip of Cardillo's whisky sour between 9:00 p.m. and 11:00 p.m., and two "woo-woos" between 11:00 p.m. and 1:45 a.m. Walbom testified that a "woo-woo" is a shot that contains "vodka, peach and cranberry."

ter. The record does not support either of these assumptions. Appellant's argument is based on pure speculation. If anything, the evidence in the record refutes appellant's theory. Walbom testified that after she identified appellant in the photographic lineup, she did not talk to Cardillo about the identification. Officer Defee, who conducted the photographic lineup for both complainants, admonished each of them not to discuss with each other which person, if any, they identified as the robber. There is no evidence in the record that the women failed to comply with the officer's instructions, that Walbom told Cardillo that she had identified the photograph in the second position, or that Cardillo believed the photographs were in the same position in the two lineups. Appellant's argument is without merit.

### 3. Do inaccurate age and height estimates and appellant's brother's confession of guilt render the evidence legally insufficient?

Appellant further contends the evidence is legally insufficient because the complainants' estimates of the robber's age and height do not match appellant's age and height, and because appellant's brother testified that he (Fernando Jasso) and two of his friends committed the robbery.

According to Officer Scales's testimony, on the night of the robbery, Cardillo and Walbom both estimated the robber was between 5′5″ and 5′6″ tall, and between fifteen and eighteen years of age. At trial, appellant testified that he was not involved in the robbery.[3] Appellant further testi-

fied he is between 5′9⅝ and 5′10″ tall and he was twenty-four years old at the time of the robbery.

After appellant testified, Fernando Jasso testified that appellant had no involvement in the robbery. According to Fernando, his friends, Albaget Garza and Samuel Calderon, robbed Walbom and Cardillo while he waited in the Pathfinder. Fernando testified that Calderon is about 5′5″ or 5′6″ and was seventeen or eighteen years old at the time of trial. Fernando also stated that Garza is about 5′7″ tall and was nineteen or twenty years old at the time of trial. According to Fernando, Garza and Calderon both had knives when they jumped out of the Pathfinder to rob Walbom and Cardillo. Fernando testified that Garza "pulled the knife" on Cardillo and Walbom, and Fernando found Garza's knife in the backseat of the Pathfinder when he returned to his home after the robbery. Fernando testified that he kept the knife in his bedroom and then gave it to Officer Defee the day before trial. Fernando also testified that while driving the Pathfinder, he turned on Converse Street from Fargo Street[4] just before the robbery, and that the robbery occurred on Converse Street. On cross-examination, however, Fernando admitted that he could not provide those details when he gave his first statement to Officer Defee.[5]

The State's evidence contradicted appellant's and Fernando's testimony. Walbom testified she thought she told the police the robber was about her height, 5′,6″ or taller, because, when she was standing about

---

**3.** Appellant's prior arrests and jail sentences for unauthorized use of a motor vehicle and evading arrest were admitted into evidence as a result of his decision to testify.

**4.** At trial, when asked the name of the street he was driving on before he turned on Converse Street he answered, "I don't recall. I think it was Drew." When asked the same

question a second time, Fernando testified he was driving on Fargo Street before he turned on Converse.

**5.** Fernando's prior conviction for burglary of a motor vehicle was admitted into evidence on cross-examination as a result of his decision to testify.

a foot away from him, she was looking up at him to make eye contact. Each of the two complainants individually identified appellant as the robber on three separate occasions, but neither of them identified Fernando, Garza, or Calderon as one of the robbers.

Walbom and Cardillo first identified appellant in the photographic lineup that Officer Defee made after tracing the license-plate number of the Pathfinder. Walbom positively identified appellant almost immediately and Cardillo positively identified appellant within about a minute. After appellant was arrested, he was included in a live lineup during which he was required to speak while the complainants viewed him and several "fill-ins" at close range through a one-way mirror. Cardillo testified she recognized appellant almost immediately at the live lineup because of his voice and appearance. Walbom testified she recognized appellant in the photographic lineup and the live lineup, because she remembered his ears, small eyes, and full lips from the night of the robbery. Finally, at trial, both Walbom and Cardillo identified appellant as the robber in open court.

Officer Defee did not include photographs of Fernando, Garza, and Calderon in the original photographic lineup because Fernando only came forward with his account of the robbery ten or eleven days after appellant's arrest. At that point in the investigation, the police still were trying to identify the robber who did not have a knife, so after Fernando claimed responsibility for the robbery, Officer Defee showed the complainants a second photographic lineup which included photographs of Fernando, Garza, and Calderon. Walbom and Cardillo viewed this photographic lineup separately, on the same afternoon, but neither of them identified any of the persons pictured as being involved in the robbery.

In addition to the complainants' identification testimony, circumstantial evidence admitted at trial also pointed to appellant. Walbom testified her car keys were in her purse when the robber took it. At that time, Walbom's key chain had four keys, a hook, an Adidas tag, a bottle opener, and a grocery-store courtesy card tag containing a scanner code. Walbom did not see her keys again until several months after the robbery when she received them in the mail from the grocery store. The store was able to identify Walbom as the owner of the keys and mail them to her because the store's courtesy tag was still on her key chain.[6] When the keys were returned, there were three additional keys on the chain, including a car key. Based on the length, symbol, and number of cuts on the key, a parts manager from a Lincoln–Mercury dealership testified the key fit a Lincoln or Mercury that was made between 1981 and 1992. The parts manager testified the keys could fit a 1991 Lincoln Towncar. Appellant and appellant's mother both testified that appellant rarely drove the red Pathfinder because he drove a 1991 Lincoln Towncar that nobody else drove.[7]

It was the jury's duty to resolve conflicting evidence in this case. *See Anderson v. State,* 701 S.W.2d 868, 872–73 (Tex.Crim. App.1985); *see also Heiselbetz v. State,* 906 S.W.2d 500, 504 (Tex.Crim.App.1995)

6. The grocery store also sent Walbom a letter explaining it had no way of knowing where the keys were found or who returned the keys because they were returned to the store's regional office without any other information.

7. Appellant's Towncar was repossessed by a creditor after he was arrested. Officer Defee testified his attempts to locate appellant's repossessed Towncar to test the key were unsuccessful.

("Reconciliation of conflicts in the evidence is within the exclusive province of the jury."). The jury had before it all of the relevant information concerning the identification of appellant, and, as fact finder, the jury had the duty to determine the credibility of the witnesses' testimony and to decide the weight to be given the evidence. *See Garza v. State,* 633 S.W.2d 508, 514 (Tex.Crim.App.1981) (opin. on reh'g); *see also Carr v. State,* 694 S.W.2d 123, 128 (Tex.App.-Houston [14th Dist.] 1985, pet. ref'd). Whether considered alone or in conjunction with appellant's other arguments for legal insufficiency, neither the complainants' inaccurate estimates of the robber's age and height nor Fernando's testimony made it impossible for a rational trier of fact to find the essential elements of aggravated robbery beyond a reasonable doubt. *See McDuff,* 939 S.W.2d at 614; *Davis v. State,* 831 S.W.2d 839, 842 (Tex.App.-Dallas 1992, pet. ref'd). The evidence is therefore legally sufficient to sustain appellant's aggravated-robbery conviction. We overrule appellant's first issue.

**B. Did a pretrial procedure, alleged to have been unduly suggestive, taint the complainants' in-court identification of appellant?**

In his second issue, appellant maintains the photographic lineup viewed by the complainants was unduly suggestive for three reasons: (1) the photograph of appellant used in the lineup was four years old; (2) appellant's photograph was in the second position in both the lineup shown to Walbom and in the lineup shown to Cardillo, so it is likely Walbom told Cardillo to pick appellant's photograph; and (3) the witnesses were too intoxicated at the time of the robbery to later make an accurate identification.

■ Appellant has not preserved error on his second issue. At trial, appellant did not argue that the age of the photograph rendered the pretrial-lineup procedure unduly suggestive. His trial objection was simply that the photograph was too old. Because appellant's complaint on appeal does not comport with his trial objection, he has failed to preserve error on this complaint. *See Guevara v. State,* 97 S.W.3d 579, 583 (Tex.Crim.App.2003).

■ Appellant also waived his second and third arguments because he did not raise these objections at trial. *See* TEX. R.APP. P. 33.1(a)(1) (requiring party to make a specific, timely objection to the trial court to preserve error for appellate review). After the trial court overruled appellant's objection to the age of the photograph, the trial court asked defense counsel whether he had any further objection to admission of the photographic lineup evidence. Defense counsel stated he had no further objection, and thus he failed to preserve error. *See Canales v. State,* 98 S.W.3d 690, 699 (Tex.Crim.App. 2003) (finding failure to preserve error when defense counsel did not register further objection after trial court instructed him to do so if necessary). Accordingly, we overrule appellant's second issue.

**C. Was appellant entitled to a mistrial because the results of a polygraph test were revealed?**

■ In his third issue, appellant argues the trial court erred when it overruled his motion for mistrial. Appellant moved for a mistrial after Officer Defee testified on redirect examination that his doubts that the robbery occurred were quelled when Walbom submitted to an interview and a polygraph examination. The following exchange occurred at trial:

*Prosecutor:* Also defense counsel asked you whether you had doubts whether

the offense occurred. In fact, you said you had doubts as to whether or not this offense occurred. Do you recall that question?

*Officer Defee:* Yes, ma'am, [sic] I do.

*Prosecutor:* And could you tell this jury if in fact you overcame those doubts?

*Officer Defee:* Yes, ma'am, [sic] I did overcome those doubts by means of interview and a lie detector test that was administered there at the headquarters building at HPD central.

*Prosecutor:* And who [sic] did you administer this polygraph test to?

*Officer Defee:* To the victim Ms. Walbom.

*Defense Counsel:* Objection, Your Honor.

*The Court:* Sustained.

*Defense Counsel:* Your Honor, at this time we object, that the jury disregard the last question, last answer.

*Prosecutor:* Your Honor, defense opened that line of questioning. He had the report right before me.

*The Court:* That's overruled. The jury will disregard the last answer.

*Defense Counsel:* Move for a mistrial.

*The Court:* Overruled.

**■■■■** Because of their inherent unreliability and tendency to be unduly persuasive, the existence and results of polygraph examinations are inadmissible for any purpose in a criminal proceeding on proper objection. *Tennard v. State,* 802 S.W.2d 678, 683 (Tex.Crim.App.1990); *Gregory v. State,* 56 S.W.3d 164, 173 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd). However, the mere mention of a polygraph examination does not automatically constitute reversible error even if the results of the exam are revealed. *See Tennard,* 802 S.W.2d at 684.

**■■■■** To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. TEX.R.APP. P. 33.1(a); *Saldano v. State,* 70 S.W.3d 873, 886–87 (Tex.Crim.App.2002). To timely object, a party must object to the evidence, if possible, before it is actually admitted. *Ethington v. State,* 819 S.W.2d 854, 858–59 (Tex.Crim.App.1991). If it is not possible to object before the evidence is admitted, then the party must object as soon as the objectionable nature of the evidence becomes apparent and must move to strike the objectionable evidence that already has been admitted. *Id.*

The standard set by our high court for the timely assertion of objections is both demanding and unforgiving. *See Lagrone v. State,* 942 S.W.2d 602, 617–18 (Tex. Crim.App.1997) (finding objection untimely when appellant's counsel objected after prosecutor had spoken only four words following the testimony in question). Applying this standard to the testimony and objection now before us, we must conclude that appellant failed to preserve error because he did not make a timely objection. *See* TEX.R.APP. P. 33.1; *Lagrone,* 942 S.W.2d at 617–18; *Ethington,* 819 S.W.2d at 858–59. Because polygraph examination results are inadmissible for any purpose, the objectionable nature of Officer Defee's testimony was apparent as soon as he said he used a polygraph exam to overcome his doubts in this case. And because defense counsel did not object as soon as Officer Defee mentioned the polygraph examination, but instead waited to object until after another question was asked and answered, appellant failed to preserve any error. *See Willis v. State,* 785 S.W.2d 378, 384 (Tex.Crim.App.1989) (holding any error in mention of polygraph exam waived when defense counsel did not object until the conclusion of witness's testimony). Ac-

cordingly, we overrule appellant's third issue.

Even if appellant's objection were considered timely, the error in the admission of the polygraph examination evidence was harmless beyond a reasonable doubt. *See Tennard*, 802 S.W.2d at 684. When a polygraph exam is mentioned at trial and defense counsel requests a mistrial, the reviewing court must first determine whether the examination results were revealed to the jury. *Id.* Generally, when polygraph examination results are mentioned, but results are not revealed, an instruction to disregard is sufficient to cure any error. *See id.* However, when results are revealed to the jury, an instruction to disregard alone is insufficient and the reviewing court must conduct a harm analysis to determine whether the error merits reversal of the trial court's judgment. *See id.; see also Buckley v. State*, 46 S.W.3d 333, 336–37 (Tex.App.-Texarkana 2001, pet. dism'd). In determining whether the trial court erroneously failed to grant a mistrial, the reviewing court may also consider (1) whether the questioning party exhibited bad faith by asking a question designed to elicit polygraph evidence; and (2) whether polygraph evidence bolstered the State's case. *See Buckley*, 46 S.W.3d at 336–37; *see also Sparks v. State*, 820 S.W.2d 924, 927–28 (Tex.App.-Austin 1991, no pet.) (summarizing Court of Criminal Appeals polygraph decisions).

Officer Defee's polygraph testimony implicitly conveyed to the jury that one of the complainants, Walbom, passed a polygraph examination—Officer Defee testified the results of the examination overcame his concerns that the robbery did not really occur. *See Nichols v. State*, 378 S.W.2d 335, 337 (Tex.Crim.App.1964) (finding polygraph results indirectly communicated to jury by State's merely asking testifying complainant in rape case whether she had taken a polygraph exam). As Walbom was also a witness for the State, the polygraph evidence undoubtedly enhanced her credibility. *See Tennard*, 802 S.W.2d at 684 (finding officer's statement that another prosecution witness passed polygraph exam bolstered other witnesses' testimony). Moreover, the State's questioning was designed to elicit evidence regarding the polygraph exam and, as such, exhibited bad faith. Although Officer Defee first mentioned the polygraph examination in a nonresponsive answer to whether he overcame his doubts (not *how* he overcame his doubts) in the case, the State proceeded by asking to whom Officer Defee administered the test. *Compare Tennard*, 802 S.W.2d at 684 (finding officer's answer that he believed suspect because of polygraph results nonresponsive because question was *whether* he believed suspect), *with Nichols*, 378 S.W.2d at 336 (finding state intentionally elicited polygraph evidence by improperly asking witness whether she took a polygraph exam). Accordingly, the trial court's instruction to disregard would be deemed insufficient to cure error, and, had appellant preserved error, this court would next consider whether the error was harmless. *See Tennard*, 802 S.W.2d at 684.

In conducting a harm analysis in *Tennard*, the Texas Court of Criminal Appeals found beyond a reasonable doubt that the erroneous admission of polygraph examination results did not contribute to the verdict or punishment, because the polygraph examination was not administered to the State's sole witness "nor even a crucial witness," other evidence corroborated the testimony of the witness whose testimony the polygraph evidence bolstered, and the officer who testified about polygraph ex-

amination results did so to show his own reasons for believing the witness.[8] 802 S.W.2d at 684. As in *Tennard,* Walbom was not the State's sole witness, though she was a more crucial witness than the witness at issue in *Tennard.* Moreover, Cardillo, the other complainant, provided corroborating testimony that identified appellant as the robber. The red Pathfinder and the Lincoln Towncar car key on Walbom's returned key chain also provided circumstantial evidence of appellant's guilt. Also, as in *Tennard,* Officer Defee testified about Walbom's polygraph examination to show his own reasons for believing the robbery in this case occurred. Officer Defee did not reveal the polygraph results to bolster Walbom's identification testimony that went to the main issue at trial— whether appellant committed the robbery. Given this evidence, even if appellant had preserved error on the State's introduction of polygraph examination results by making a timely, specific objection, any error in denying a mistrial would be harmless.

### IV. CONCLUSION

The evidence is legally sufficient to sustain appellant's aggravated-robbery conviction. Appellant failed to preserve error regarding his complaint that a pretrial identification procedure, alleged to have been unduly suggestive, tainted the complainants' in-court identification of appellant. He also failed to preserve error on his complaint about the admission of polygraph examination testimony; and, even absent waiver, the error would be harmless.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

---

**8.** Although *Tennard* is factually distinguishable from the present case because the polygraph examination results in that case were only admitted when the testifying officer gave a nonresponsive answer, this difference does not bear on the present harm analysis because the *Tennard* court only considered the responsiveness of the officer's answer in determining whether defense counsel invited the polygraph testimony, and not in its harm analysis. *See Tennard,* 802 S.W.2d at 684.