IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00316-CR

 

Michael Scott Williams,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 85th District
Court

Brazos County, Texas

Trial Court No. 06-01734-CRF-85

 



MEMORANDUM  Opinion



 








Appellant Michael Scott Williams pleaded
guilty to five counts of indecency with a child by contact.  See Tex. Penal Code Ann. § 21.11(a)(1)
(Vernon 2011).  The trial court deferred an adjudication of guilt and placed
Williams on community supervision for eight years.  The State subsequently
filed a motion to adjudicate guilt.  Williams pleaded “not true” to all the
allegations.  The trial court adjudicated Williams guilty and sentenced him to
ten years’ imprisonment for each indecency count, to run concurrently.  This
appeal ensued.  We will affirm.

In his first issue, Williams contends
that the trial court abused its discretion in finding that the State met its
burden of proving that he violated the conditions of his community supervision
by a preponderance of the evidence.

            A determination of an
adjudication of guilt is reviewable in the same manner as that used to
determine whether sufficient evidence supported the trial court’s decision to
revoke community supervision.  See Tex.
Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon 2010).  The State must
prove by a preponderance of the evidence that a defendant violated the terms of
his community supervision.  Rickels v. State, 202 S.W.3d 759, 763-64
(Tex. Crim. App. 2006).  A preponderance of the evidence means “that greater
weight of the credible evidence which would create a reasonable belief that the
defendant has violated a condition of his probation.”  Id.

            Considering the unique nature of a
revocation hearing and the trial court’s broad discretion in the proceedings,
the general standards for reviewing sufficiency of the evidence do not apply.  Pierce
v. State, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref’d). 
Instead, we review the trial court’s decision regarding community supervision
revocation for an abuse of discretion and examine the evidence in a light most
favorable to the trial court’s order.  Garrett v. State, 619 S.W.2d 172,
174 (Tex. Crim. App. 1981).  The trial judge is the trier of fact and
determines the credibility of the witnesses and the weight to be given to the
testimony.  Id.  If the State’s proof is sufficient to prove any one of
the alleged community supervision violations, the revocation should be
affirmed.  Pierce, 113 S.W.3d at 436.

  

In the motion to adjudicate guilt, the
State alleged that Williams violated the terms and conditions of his community
supervision as follows:

Condition (7):  In that the defendant
failed to pay a fine, costs of Court and attorney fees, totaling $5,306.50 in
equal monthly installments of $100.00 for the months [sic] of December 2008;

 

Condition (8):  In that the defendant
failed to pay Crime Stoppers and substance abuse evaluation fee to the Brazos
County Community Supervision Department totaling $30.00 in equal monthly
installments of $30.00 for the month of September 2006;

 

Condition (9):  In that the defendant
failed to pay $50.00 per month in supervision fees for the months of April
through December 2007, January through December 2008 and January 2009;

 

Condition (12):  In that the defendant
failed to perform 240 hours of community service at a rate of 10 hours per
month;

 

Condition (13):  In that the defendant,
on or about October 7, 2008, failed to abstain from the use of alcoholic
beverages;

 

Condition (41):  In that the defendant,
on or about September 21, 2007, viewed pornography;

 

In that the defendant, on or about
October 21, 2008, viewed pornography.

 

At the hearing on the motion to
adjudicate guilt, only one witness testified—Charlie Russ, Williams’s Brazos
County probation officer from the time he had been placed on probation in
August 2006.  Russ testified that Williams had lived in Harris County some of
the time he had been on probation and had another probation officer there, but
Russ had kept up to date with Williams’s case, and the Harris County probation
officer had notified Russ monthly of any changes.

            As for Condition 7 of
Williams’s probation, Russ testified that Williams was required to pay $100 a
month toward his fines and court costs.  Russ stated that Williams was up to
date on his payment on the day of the adjudication hearing, but when asked
about what Williams had paid at the time the motion to adjudicate guilt was
filed, Russ replied, “She just said that he was delinquent but didn’t give me a
specific amount.”

            As for Condition 8, Russ testified
that Williams did not make the payment in September 2006 for the fee required;
he was delinquent $14.72 in paying Crime Stoppers and $6.93 in paying the
evaluation fee.  Likewise, as for Condition 9, Russ stated that Williams was
delinquent $1,020.13 in paying his probation fees.  Williams had a full-time job
the entire time he was on probation, and he never told Russ that he could not
afford to pay for the fees.

            As for Condition 12, Russ
testified that Williams was required to perform ten hours per month of
community service and that if Williams had been performing community service at
a rate of ten hours per month, he would have completed it, but Williams still
had four and one-half hours left to complete.  On cross-examination, however, Russ
stated that the community service records had come from the probation officer
in Houston, that he had no personal knowledge of the community service, and
that the record could be wrong.

            As for Condition 13, Russ
stated that Williams admitted drinking an alcoholic beverage on October 7,
2008.  When asked how that came about, Russ said that he had had a conversation
with Williams after a polygraph[1]
when Williams admitted to drinking alcohol.  Russ also testified that Williams
admitted to several instances in which he viewed pornography, which is a
violation of Condition 41 of his probation.  On cross-examination, Russ stated
that Williams would come into his office and they would discuss the latest
admissions that he made during the polygraph exams, and Williams admitted to
looking at pornographic images on September 21, 2007 and October 21, 2008.  In
fact, he admitted to looking at pornography four or five times over the three
years that he was on probation.

In the first part of his second issue, Williams
contends that the trial court erred in admitting any testimony regarding the polygraph
examination given to him as a condition of probation and, therefore, that the
testimony should not be used as evidence of a violation of probation.  Williams
first points to the following exchange:

[PROSECUTOR]:  Okay.  And that was a
situation where what?  What happened?

 

[WITNESS]:  He -- it was situation where
I got a polygraph result, and --

 

[DEFENSE COUNSEL]:  Object to testimony
regarding the polygraph test, Judge.

 

THE COURT:  As to result sustained.

            

[PROSECUTOR]:  Without going into his
result, did you have a conversation with him after a polygraph?

 

[WITNESS]:  Yes.

 

[PROSECUTOR]:  And did he admit to
drinking alcohol to you?

 

[WITNESS]:  Right.  Yes, he did.

 

[PROSECUTOR]:  And along those same
lines, on Condition 41 -- let’s see here.  Is the defendant allowed to view any
form of pornography on his probation?

 

[WITNESS]:  No, sir.

 

[PROSECUTOR]:  And has he?

 

[WITNESS]:  Yes, sir.

 

[PROSECUTOR]:  Do you have a record of
when he did that?

. . . .

 

[WITNESS]:  He’s specifically told me --
I addressed the issue with him.  He admits that a brother and coworkers would
send him e-mails and that he’s even looked on his supervisor’s computer and
specifically has seen pornographic images.

 

Williams complains that this testimony “about
admissions made by the Appellant as to drinking alcohol and viewing pornography
are [sic] a direct result of the polygraph tests and should have been
inadmissible.”  However, Williams’s objection was sustained.  He did not
further pursue his objection to an adverse ruling.  To preserve a complaint for
review, a defendant must receive an adverse ruling on his objection.  Ramirez
v. State, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991).  Furthermore, Williams
did not thereafter specifically object to the purported admissions because they
included polygraph evidence nor did Williams obtain a running objection to the
polygraph evidence.  To preserve an issue for appellate review, a timely and
specific objection is required.  Tex. R.
App. P. 33.1(a)(1)(A); Tex. R.
Evid. 103(a)(1); Jasso v. State, 112 S.W.3d 805, 813 (Tex.
App.—Houston [14th Dist.] 2003, pet. ref’d) (explaining that the “standard set
by our high court for the timely assertion of objections is both demanding and
unforgiving”); see Graham v. State, 3 S.W.3d 272, 285 (Tex. App.—Fort
Worth 1999, pet. ref’d).  Therefore, Williams failed to preserve his complaint about
this testimony.

            Williams
also complains of Russ’s testimony on cross-examination because Russ
“admit[ted] that the admissions and subsequent conversations as to viewing
pornography came from the polygraph tests.” For example, the following exchange
took place during defense counsel’s cross-examination of Russ:

[DEFENSE COUNSEL]:  Okay.  How
frequently?

 

[WITNESS]:  Well, it seems like every
time he would have a polygraph, he would make admissions that this is what’s
happened, this is what’s happened.  Every time -- every polygraph result that
I’ve got, the admissions were made, “Yes, I’ve looked at pornography.”

 

[DEFENSE COUNSEL]:  Total of four?

 

[WITNESS]:  Four or five.

 

[DEFENSE COUNSEL]:  Over three years?

 

[WITNESS]:  Uh-huh.

 

[DEFENSE COUNSEL]:  Okay.  And you say
that’s a pattern?

 

[WITNESS]:  Well, I’ve got to assume
that each time he is questioned during a polygraph exam about the use of
pornography and he makes admissions, my logical conclusion is that it’s a --
I’m sure he’s carrying it on every day, every week, because it’s -- it can’t be
just a coincidence during a polygraph exam.

 

[DEFENSE COUNSEL]:  Okay.  You said two
words there:  There’s a -- you have to assume and the logical inference.  Do
you have any proof that --

 

[WITNESS]:  No, I don’t have any proof. 
I’m just -- based on the fact that he’s always admitted to looking at
pornography during a polygraph exam.

 

[DEFENSE COUNSEL]:  Okay.

 

Williams again made no specific
objection to any of this testimony as improper polygraph evidence; therefore,
Williams failed to preserve his complaint about this testimony as well.  See
Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1); Jasso, 112
S.W.3d at 813; see Graham, 3 S.W.3d at 285.

            The only exchange in which
Williams made a specific objection about polygraph evidence and obtained an
adverse ruling is as follows:

[PROSECUTOR]:  In your conversations and
based on his manner and demeanor and just the way he’s talking about it, did it
seem like it was happening more than just these isolated incidents; or did it
sound more like a pattern to you?

 

[WITNESS]:  Well, he would always call
me after a polygraph result –

 

. . . .

 

[WITNESS]:  He would call me and let me
know that he didn’t do very well on the polygraph –

 

            [DEFENSE COUNSEL]:  Object
to any statements regarding polygraph, whether it’s an admission or not.  I
don’t think it’s relevant in this case.

 

            THE COURT:  Overruled.

 

[WITNESS]:  He would just tell me that
he either didn’t pass it or he made admissions that someone sent him an e-mail,
looking at pornography.  So we talked a lot over the phone because he would call
me and tell me what was going on and what was bothering him, the struggles he
was having and he was always worried and concerned about not being able to pass
the polygraph and we would talk about some of the admissions that he made.

 

But even assuming that the trial court
erroneously admitted this testimony regarding the polygraph over proper
objection, Williams was not harmed by its admission.  See Tex. R. App. P. 44.2(b).  As shown
above, other polygraph testimony was received into evidence without objection. 
See Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).  And the
unobjected-to admissions were sufficient for the trial court to find, in its
discretion as sole fact-finder, that Williams violated at least one condition
of his community supervision by a preponderance of the evidence.  Pierce,
113 S.W.3d at 436.  We accordingly overrule Williams’s first issue and the
first part of his second issue.

            In the second part of
Williams’s second issue, he contends that the trial court also erred in
admitting testimony regarding the polygraph examination during the punishment
phase.  During the punishment phase, Williams’s counsel made an oral motion in
limine “with regards to any polygraph testing; results; interpretations; or
any, I guess, conclusions drawn from those polygraph tests or results due to
the fact they would not be admissible in court.”  The trial court sustained the
motion as to the results and conclusions.  The prosecutor then stated, “That’s
fine.  I anticipate -- any conversation these two -- the defendant and the
counselor had subsequent to a polygraph is what I would anticipate talking
about,” and the court replied, “All right.  As I understand that motion, it
doesn’t apply to those statements -- . . . -- unless they are involving the
results of the polygraph.”

A motion in limine normally preserves
nothing for review.  Fuller v. State, 253 S.W.3d 220, 232 (Tex. Crim.
App. 2008).  “For error to be preserved with regard to the subject of a motion in
limine, an objection must be made at the time the subject is raised during
trial.”  Id.  Williams made no objection to the polygraph testimony at
the time it was raised during the punishment phase; therefore, Williams failed
to preserve his complaint about this testimony as well.  We overrule the second
part of Williams’s second issue.

            Having overruled both of
Williams’s issues, we affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Affirmed

Opinion
delivered and filed August 17, 2011

Do
not publish

[CR25]









[1] Condition 40 of Williams’s probation
required him to “[s]ubmit to polygraph testing at your expense at the direction
of and within 30 days of said request by the supervising officer/aide, to
assist in determining compliance with the conditions of supervision, and/or
facilitating mental health treatment.”