

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00316-CR

**MICHAEL SCOTT WILLIAMS,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 06-01734-CRF-85

## MEMORANDUM  OPINION

Appellant Michael Scott Williams pleaded guilty to five counts of indecency with a child by contact. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon 2011). The trial court deferred an adjudication of guilt and placed Williams on community supervision for eight years. The State subsequently filed a motion to adjudicate guilt. Williams pleaded "not true" to all the allegations. The trial court adjudicated Williams guilty and sentenced him to ten years' imprisonment for each indecency count, to run concurrently. This appeal ensued. We will affirm.

In his first issue, Williams contends that the trial court abused its discretion in finding that the State met its burden of proving that he violated the conditions of his community supervision by a preponderance of the evidence.

A determination of an adjudication of guilt is reviewable in the same manner as that used to determine whether sufficient evidence supported the trial court's decision to revoke community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (Vernon 2010). The State must prove by a preponderance of the evidence that a defendant violated the terms of his community supervision. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex. Crim. App. 2006). A preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Id.*

Considering the unique nature of a revocation hearing and the trial court's broad discretion in the proceedings, the general standards for reviewing sufficiency of the evidence do not apply. *Pierce v. State*, 113 S.W.3d 431, 436 (Tex. App.—Texarkana 2003, pet. ref'd). Instead, we review the trial court's decision regarding community supervision revocation for an abuse of discretion and examine the evidence in a light most favorable to the trial court's order. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The trial judge is the trier of fact and determines the credibility of the witnesses and the weight to be given to the testimony. *Id.* If the State's proof is sufficient to prove any one of the alleged community supervision violations, the revocation should be affirmed. *Pierce*, 113 S.W.3d at 436.

In the motion to adjudicate guilt, the State alleged that Williams violated the terms and conditions of his community supervision as follows:

Condition (7): In that the defendant failed to pay a fine, costs of Court and attorney fees, totaling $5,306.50 in equal monthly installments of $100.00 for the months [sic] of December 2008;

Condition (8): In that the defendant failed to pay Crime Stoppers and substance abuse evaluation fee to the Brazos County Community Supervision Department totaling $30.00 in equal monthly installments of $30.00 for the month of September 2006;

Condition (9): In that the defendant failed to pay $50.00 per month in supervision fees for the months of April through December 2007, January through December 2008 and January 2009;

Condition (12): In that the defendant failed to perform 240 hours of community service at a rate of 10 hours per month;

Condition (13): In that the defendant, on or about October 7, 2008, failed to abstain from the use of alcoholic beverages;

Condition (41): In that the defendant, on or about September 21, 2007, viewed pornography;

In that the defendant, on or about October 21, 2008, viewed pornography.

At the hearing on the motion to adjudicate guilt, only one witness testified—Charlie Russ, Williams's Brazos County probation officer from the time he had been placed on probation in August 2006. Russ testified that Williams had lived in Harris County some of the time he had been on probation and had another probation officer there, but Russ had kept up to date with Williams's case, and the Harris County probation officer had notified Russ monthly of any changes.

As for Condition 7 of Williams's probation, Russ testified that Williams was required to pay $100 a month toward his fines and court costs. Russ stated that

Williams was up to date on his payment on the day of the adjudication hearing, but when asked about what Williams had paid at the time the motion to adjudicate guilt was filed, Russ replied, "She just said that he was delinquent but didn't give me a specific amount."

As for Condition 8, Russ testified that Williams did not make the payment in September 2006 for the fee required; he was delinquent $14.72 in paying Crime Stoppers and $6.93 in paying the evaluation fee. Likewise, as for Condition 9, Russ stated that Williams was delinquent $1,020.13 in paying his probation fees. Williams had a full-time job the entire time he was on probation, and he never told Russ that he could not afford to pay for the fees.

As for Condition 12, Russ testified that Williams was required to perform ten hours per month of community service and that if Williams had been performing community service at a rate of ten hours per month, he would have completed it, but Williams still had four and one-half hours left to complete. On cross-examination, however, Russ stated that the community service records had come from the probation officer in Houston, that he had no personal knowledge of the community service, and that the record could be wrong.

As for Condition 13, Russ stated that Williams admitted drinking an alcoholic beverage on October 7, 2008. When asked how that came about, Russ said that he had had a conversation with Williams after a polygraph[1] when Williams admitted to

---

[1] Condition 40 of Williams's probation required him to "[s]ubmit to polygraph testing at your expense at the direction of and within 30 days of said request by the supervising officer/aide, to assist in determining compliance with the conditions of supervision, and/or facilitating mental health treatment."

drinking alcohol.  Russ also testified that Williams admitted to several instances in which he viewed pornography, which is a violation of Condition 41 of his probation. On cross-examination, Russ stated that Williams would come into his office and they would discuss the latest admissions that he made during the polygraph exams, and Williams admitted to looking at pornographic images on September 21, 2007 and October 21, 2008.  In fact, he admitted to looking at pornography four or five times over the three years that he was on probation.

In the first part of his second issue, Williams contends that the trial court erred in admitting any testimony regarding the polygraph examination given to him as a condition of probation and, therefore, that the testimony should not be used as evidence of a violation of probation.  Williams first points to the following exchange:

[PROSECUTOR]:  Okay.  And that was a situation where what?  What happened?

[WITNESS]:  He -- it was situation where I got a polygraph result, and --

[DEFENSE COUNSEL]:  Object to testimony regarding the polygraph test, Judge.

THE COURT:  As to result sustained.

[PROSECUTOR]:  Without going into his result, did you have a conversation with him after a polygraph?

[WITNESS]:  Yes.

[PROSECUTOR]:  And did he admit to drinking alcohol to you?

[WITNESS]:  Right.  Yes, he did.

[PROSECUTOR]: And along those same lines, on Condition 41 -- let's see here. Is the defendant allowed to view any form of pornography on his probation?

[WITNESS]: No, sir.

[PROSECUTOR]: And has he?

[WITNESS]: Yes, sir.

[PROSECUTOR]: Do you have a record of when he did that?
. . . .

[WITNESS]: He's specifically told me -- I addressed the issue with him. He admits that a brother and coworkers would send him e-mails and that he's even looked on his supervisor's computer and specifically has seen pornographic images.

Williams complains that this testimony "about admissions made by the Appellant as to drinking alcohol and viewing pornography are [sic] a direct result of the polygraph tests and should have been inadmissible." However, Williams's objection was sustained. He did not further pursue his objection to an adverse ruling. To preserve a complaint for review, a defendant must receive an adverse ruling on his objection. *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Furthermore, Williams did not thereafter specifically object to the purported admissions because they included polygraph evidence nor did Williams obtain a running objection to the polygraph evidence. To preserve an issue for appellate review, a timely and specific objection is required. TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (explaining that the "standard set by our high court for the timely assertion of objections is both demanding and unforgiving"); *see Graham v. State*, 3 S.W.3d 272, 285 (Tex. App.—Fort

Worth 1999, pet. ref'd). Therefore, Williams failed to preserve his complaint about this testimony.

Williams also complains of Russ's testimony on cross-examination because Russ "admit[ted] that the admissions and subsequent conversations as to viewing pornography came from the polygraph tests." For example, the following exchange took place during defense counsel's cross-examination of Russ:

[DEFENSE COUNSEL]: Okay. How frequently?

[WITNESS]: Well, it seems like every time he would have a polygraph, he would make admissions that this is what's happened, this is what's happened. Every time -- every polygraph result that I've got, the admissions were made, "Yes, I've looked at pornography."

[DEFENSE COUNSEL]: Total of four?

[WITNESS]: Four or five.

[DEFENSE COUNSEL]: Over three years?

[WITNESS]: Uh-huh.

[DEFENSE COUNSEL]: Okay. And you say that's a pattern?

[WITNESS]: Well, I've got to assume that each time he is questioned during a polygraph exam about the use of pornography and he makes admissions, my logical conclusion is that it's a -- I'm sure he's carrying it on every day, every week, because it's -- it can't be just a coincidence during a polygraph exam.

[DEFENSE COUNSEL]: Okay. You said two words there: There's a -- you have to assume and the logical inference. Do you have any proof that --

[WITNESS]: No, I don't have any proof. I'm just -- based on the fact that he's always admitted to looking at pornography during a polygraph exam.

[DEFENSE COUNSEL]:  Okay.

Williams again made no specific objection to any of this testimony as improper polygraph evidence; therefore, Williams failed to preserve his complaint about this testimony as well. *See* TEX. R. APP. P. 33.1(a)(1)(A); TEX. R. EVID. 103(a)(1); *Jasso*, 112 S.W.3d at 813; *see Graham*, 3 S.W.3d at 285.

The only exchange in which Williams made a specific objection about polygraph evidence and obtained an adverse ruling is as follows:

> [PROSECUTOR]:  In your conversations and based on his manner and demeanor and just the way he's talking about it, did it seem like it was happening more than just these isolated incidents; or did it sound more like a pattern to you?
>
> [WITNESS]:  Well, he would always call me after a polygraph result –
>
> . . . .
>
> [WITNESS]:  He would call me and let me know that he didn't do very well on the polygraph –
>
>     [DEFENSE COUNSEL]:  Object to any statements regarding polygraph, whether it's an admission or not.  I don't think it's relevant in this case.
>
>     THE COURT:  Overruled.
>
> [WITNESS]:  He would just tell me that he either didn't pass it or he made admissions that someone sent him an e-mail, looking at pornography.  So we talked a lot over the phone because he would call me and tell me what was going on and what was bothering him, the struggles he was having and he was always worried and concerned about not being able to pass the polygraph and we would talk about some of the admissions that he made.

But even assuming that the trial court erroneously admitted this testimony regarding the polygraph over proper objection, Williams was not harmed by its

admission. *See* TEX. R. APP. P. 44.2(b). As shown above, other polygraph testimony was received into evidence without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). And the unobjected-to admissions were sufficient for the trial court to find, in its discretion as sole fact-finder, that Williams violated at least one condition of his community supervision by a preponderance of the evidence. *Pierce*, 113 S.W.3d at 436. We accordingly overrule Williams's first issue and the first part of his second issue.

In the second part of Williams's second issue, he contends that the trial court also erred in admitting testimony regarding the polygraph examination during the punishment phase. During the punishment phase, Williams's counsel made an oral motion in limine "with regards to any polygraph testing; results; interpretations; or any, I guess, conclusions drawn from those polygraph tests or results due to the fact they would not be admissible in court." The trial court sustained the motion as to the results and conclusions. The prosecutor then stated, "That's fine. I anticipate -- any conversation these two -- the defendant and the counselor had subsequent to a polygraph is what I would anticipate talking about," and the court replied, "All right. As I understand that motion, it doesn't apply to those statements -- . . . -- unless they are involving the results of the polygraph."

A motion in limine normally preserves nothing for review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). "For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the time the subject is raised during trial." *Id.* Williams made no objection to the polygraph testimony at the time it

was raised during the punishment phase; therefore, Williams failed to preserve his complaint about this testimony as well. We overrule the second part of Williams's second issue.

Having overruled both of Williams's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
          Justice Davis, and
          Justice Scoggins
Affirmed
Opinion delivered and filed August 17, 2011
Do not publish
[CR25]